[No. H010904. Sixth Dist. May 26, 1994.]

THE PEOPLE, Plaintiff and Respondent, v.
LEON RICHARD FRANKLIN, Defendant and Appellant.

## COUNSEL

Jill M. Bojarski and Jeffrey M. Evans, under appointments by the Court of Appeal, for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Ronald A. Bass, Assistant Attorney General, Ronald S. Matthias and Richard A. Rochman, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**PREMO, Acting P. J.**—A jury convicted Leon Richard Franklin of one count of continuous sexual abuse of a child under the age of 14 with substantial sexual contact (Pen. Code, §§ 288.5, 1203.066, subd. (a)(8)) and he was sentenced to 16 years in state prison. He appeals, contending that he was prejudiced by the exclusion of evidence relevant to the contested issues in this case and that there is no factual basis for the single factor in aggravation on which the court relied to impose the upper term of imprisonment.[1]

FACTS

In 1976, defendant met Diane R. She and her then boyfriend stayed with defendant for a few months in 1978 when her mother remarried, and Diane

---

[1]Defendant has filed a second supplemental brief, raising the constitutionality of CALJIC No. 2.90, based upon *Cage* v. *Louisiana* (1990) 498 U.S. 39 [112 L.Ed.2d 339, 111 S.Ct. 328] and *Sandoval* v. *California* (No. 92-9049, cert. granted Sept. 28, 1993) __ U.S. __ [125 L.Ed.2d 789, 114 S.Ct. 40]. The Supreme Court has now upheld this instruction. (*Victor* v. *Nebraska* (1994) 511 U.S. __ [127 L.Ed.2d 583, 114 S.Ct. 1239].)

and defendant remained in contact over the years. After Diane married, her brother-in-law introduced defendant to the woman he married. The latter marriage ended in divorce less than a year later.

In March 1991, defendant needed a place for his six-year-old daughter Nile to stay until the end of the school year. Diane and her husband Steve offered to have her stay with them and their children, Shayna, then five, Steven, nine, and Sean, six. Nile shared Shayna's room.

A week after Nile came to stay with them, defendant also moved in. He slept on the sofa bed in the den, or when his back bothered him, on the hard floor of a spare room used as an office.

When the child care provider had to quit in mid-May, defendant volunteered "to keep the kids." Defendant and Shayna would drive Nile to kindergarten at noon. Then they would pick up Sean from school at 2:30 p.m. and Steven at 3:30 p.m. Diane and Steve would pick up Nile on their way home from work.

Nile went to Los Angeles to live with her mother in mid-June, and defendant moved out in August. The children, including Shayna, missed him and asked when he was coming back. Everyone was upset when defendant accepted an invitation to the children's soccer game in November but failed to attend.

In January 1992, five months after defendant had left, Diane heard a conversation between Sean and Shayna in which Shayna said she did not like appellant. When Diane inquired, Shayna said she "hate[d]" him. Diane wanted to know why, and Shayna said, "I can't tell you, mommy, 'cause it's really gross." She said, "[H]e did something to me, and what he did to me he made me do to him."

Shayna finally stated that defendant had licked her "private" and made her lick his "private," and that it was a secret. Diane told her she was saying serious things, and that they would have to call the police.

Shayna said, "yes," and announced that she had "another" secret: defendant kissed her and put his tongue in her mouth. Shayna described appellant's exposing himself and masturbating in front of her. She said he made her watch a pornographic movie, and acted out the conduct in the movie.

However, Shayna "shut down" when detective Greg Braze arrived, and refused to say anything more than defendant had done something "gross."

Braze asked Diane to interview Shayna in another room and report her answers to him. He told her not to ask leading questions or suggest answers, but to use general, open-ended questions. When he made this request, he was not aware that Diane had been molested as a child. If he had known, he probably would have listened to the interview through the door so he would also be a witness.

The interview lasted 40 minutes. Diane emerged two or three times to relate what she had learned. Each time, Braze sent her back with new directions and the admonition against leading questions and suggested answers. Shayna confirmed the mutual licking of genitals which occurred at least twice in her bedroom and possibly in the master bedroom; french kissing; appellant's exposing himself to her once while he was in the bathtub and once in the shower; appellant's telling her he was going to stick his penis inside her when she was older; appellant's making her watch pornographic movies; and appellant's promise to take her to Disneyland if she kept this secret.

Steve and Diane did not own any pornographic movies but had the Playboy channel on their bedroom television set, which also had a VCR. Steve testified he told defendant to make sure the children did not watch the Playboy channel.

Shayna repeated the facts to a child protective services worker, a marriage-family-children's counselor who was an expert in the area of child abuse, and at trial. At trial she stated defendant had been "humping her" and that it hurt, although at the preliminary hearing she said that it did not hurt. She used the word " 'horny,' " and said that she and defendant watched pornographic movies in her parents' bedroom while her brothers were outside playing. She described using hand signals that meant that she wanted to do "a little bit, a lot, or no."

Prosecution experts testified that Shayna's hymenal rim was "very, very stretched out . . . strikingly abnormal and strikingly different from normal children." Defense experts testified (from photographs) that Shayna's hymen appeared to be normal, that her condition was consistent with penetration but was not conclusive evidence of penetration.

Shayna had not complained of pain nor had her parents noticed anything unusual about Shayna or her clothing when they gave her a bath or washed her clothes. However, both parents noticed Shayna pulling at her underpants shortly after defendant moved into their home. Shayna complained that her panties were too tight, but bigger pants did not seem to solve the problem.

Shayna's grandmother noticed a discharge in her panties and "pink" in the vaginal area when Shayna stayed with her. She asked Shayna if she was all right, but Shayna "kind of . . . pull[ed] back." Diane talked to Shayna's pediatrician about the matter and reported to her mother that it was "okay."

A police officer who qualified as an expert in child sexual abuse accommodation syndrome testified "[to] dispel[] a lot of [the] myths of how we would normally think children would react and how we would expect [children] to react when they're confronted with a problem of molestation." He testified that children sometimes act out in response to the stress and guilt that molestation lays on them, that sometimes they regress in their behavior, and that sometimes they improve their conduct in an attempt to "do everything right, then maybe this will stop." He added that delayed, conflicting, and unconvincing reporting is common. He also stated that any of the behavior he described could also be exhibited by children who were not abused.

The defense contended that the molestations simply did not happen. "The defense also attempted to show that Shayna had precocious sexual knowledge and had dreamt or fantasized about sexual matters. Diane testified to one occasion when Shayna told her that she had seen Diane kissing [defendant]. After discussion, it was clear to Diane that it was a dream. However, Shayna believed at first that it had really happened. Shayna had also mentioned the incident to [defendant] and never told him that it was something she had dreamt." Both defendant and Diane testified that they had no romantic interest in each other.

The defense also sought to introduce evidence that Shayna had told her brothers that Diane had come into the room during the night and had licked her vagina. The trial court excluded the evidence because defendant did not comply with the procedural requirements of Evidence Code section 782.[2]

For the same reason, the court also refused to allow defendant to attempt to elicit from Diane evidence that she had told defendant to be sure that none of the children watched the Playboy channel and that she had caught the children watching it. Diane testified she had not discussed this subject with her husband. The court also refused to allow Diane to be questioned whether she had reprimanded Shayna for trying to go into the bathroom while her brothers were taking a bath.

The jury did hear from Steve that Diane told him she had caught the boys watching the Playboy channel, however, he did not recall whether she said

---

[2]Further statutory references are to the Evidence Code unless otherwise stated.

that Shayna had been present too. Steve confirmed that he asked defendant to make sure that the children did not watch the Playboy channel.

## CONTENTIONS ON APPEAL

Defendant contends that the trial court erred in excluding evidence of Shayna's "precocious sexual knowledge" pursuant to section 782. He contends that the evidence did not involve sexual conduct, and that it was relevant to the contested issues in this case.

Second, defendant complains that the trial court erred in choosing the upper term based solely on the factor in aggravation that defendant abused a position of trust. Defendant reasons that violation of a position of trust is a factor which is present in virtually all resident child molestation cases. Consequently, this factor can be used to aggravate a sentence only if defendant's breach of trust is more egregious than that in the average case. Defendant contends that the record does not support such a finding in this case.

## EXCLUSION OF EVIDENCE OF SEXUAL CONDUCT

At trial, defendant sought to introduce evidence "to show that Shayna had obtained her knowledge of the sexual acts which she claimed [defendant] had perpetrated on her not from [defendant's] actions but from other sources, such as the Playboy channel and her observations of her brothers in the nude, and to show that Shayna had sexual dreams or fantasies which she confused with reality."

Defendant contends that the court erred in applying section 782 to the proffered evidence. That section specifies a procedure which must be followed before a defendant being prosecuted for a sexual offense will be allowed to attack the credibility of the alleged victim by presenting evidence of that witness's sexual conduct. The procedure is initiated by the filing of a written motion supported by an affidavit in which the offer of proof is stated.

Defendant chose not to file a written motion because he maintained that the evidence he wished to present was not sexual conduct by the victim. As this court explained in *People v. Casas* (1986) 181 Cal.App.3d 889, 895 [226 Cal.Rptr. 285], sexual conduct, as that term is used in sections 782 and 1103[3], encompasses any behavior that reflects the actor's or speaker's willingness to engage in sexual activity. The term should not be narrowly construed.

---

[3]In a criminal action, section 1103, subdivision (a), allows "evidence of the character or trait of character (in the form of an opinion, evidence of reputation, or evidence of specific

■ In the instant case we need not decide whether Shayna's interest in her brothers in their bath or her watching the Playboy channel with them constituted sexual conduct because the admission of one via another witness and the exclusion of the other was not error. The evidence that Shayna saw her brothers naked had minimal probative value on the issue whether the source of her "precocious" knowledge of sexual matters was something or someone other than appellant. The evidence was either irrelevant (§ 350) or involved the undue consumption of time. (§ 352.)

However, the court's exclusion of Shayna's statement to her brothers in appellant's presence that Diane "had come into her room the night before and had licked her privates" was error.

In this statement, Shayna falsely accused[4] another person of sexual misconduct. ■ Just as a prior false accusation of rape is relevant on the issue of a rape victim's credibility (*People* v. *Adams* (1988) 198 Cal.App.3d 10, 18 [243 Cal.Rptr. 580]), a prior false accusation of sexual molestation is equally relevant on the issue of the molest victim's credibility.[5] The instance of conduct being placed before the jury as bearing on credibility is the making of the false statement, not the sexual conduct which is the content of the statement.

Even though the content of the statement has to do with sexual conduct, the sexual conduct is not the fact from which the jury is asked to draw an inference about the witness's credibility. The jury is asked to draw an inference about the witness's credibility from the fact that she stated as true something that was false. The fact that a witness stated something that is not true as true is relevant on the witness's credibility whether she fabricated the incident or fantasized it.

The evidence therefore constitutes "any matter that has any tendency in reason to prove or disprove the truthfulness of his [or her] testimony at the hearing," including the extent of the witness's capacity to perceive, to recollect, or to communicate any matter about which he or she testified, the extent of the witness's opportunity to perceive any matter about which he or

instances of conduct) of the victim of the crime for which the defendant is being prosecuted . . . if the evidence is: [¶] (1) Offered by the defendant to prove conduct of the victim in conformity with [such] character or trait of character."

[4]The statement was presented as a product of Shayna's imagination.

[5]In the trial court, defendant's testimony of his statement to the police that "if I believed everything the kids, [*sic*] said that [Diane] would be in jail herself," led to defense counsel's arguing for admissibility of the evidence because it was "a comment that my client heard this girl to say, and that is not at—anywhere under the auspices of 782." Appellant also raised the issue in connection with Shayna's credibility as a witness, since "she has a tendency to fantasize or fabricate things."

she testified, and the existence or nonexistence of any fact testified to by the witness. (§ 780, subds. (c), (d) & (i).)

The evidence is admissible under sections 1103, subdivision (a)(1), and 787. The latter section excluded specific instances of conduct to attack the credibility of a witness. However, it was held to be abrogated by the "Truth-in-Evidence" provisions of Proposition 8 (Cal. Const., art. I, § 28, subd. (d)). (*People* v. *Adams*, *supra*, 198 Cal.App.3d 10; accord, *People* v. *Harris* (1989) 47 Cal.3d 1047, 1080-1082 [255 Cal.Rptr. 352, 767 P.2d 619].)

 In the instant case, if the trier of fact found it true that Shayna falsely stated that her mother sexually molested her, this statement would be relevant to the trier of fact's determination of her credibility on defendant's culpability. The evidence should have been admitted.

"Evidence Code section 354 provides inter alia that an erroneous exclusion of evidence shall not cause a judgment to be reversed unless the error complained of resulted in a miscarriage of justice and it appears of record that: '(a) The substance, purpose, and relevance of the excluded evidence was made known to the court by the question asked, an offer of proof, or by any other means; [¶] (b) The rulings of the court made compliance with subdivision (a) futile; or [¶] (c) The evidence was sought by questions asked during cross-examination or recross-examination." (*People* v. *Adams*, *supra*, 198 Cal.App.3d at p. 18.)

The record shows that the battle for introduction of this evidence was hard-fought. The trial was basically a credibility contest between Shayna and defendant. The physical evidence was ambiguous. Shayna's emotional state during and after the period of the alleged molestation was apparently normal. Changes in Shayna's behavior did not begin until after she disclosed the misconduct to her mother. Shayna as well as her brothers missed defendant and appeared happy to see him after he moved out. The evidence was undisputed that Shayna falsely but sincerely believed that she saw her mother and defendant kissing.

In addition, there was evidence to show that the content of Shayna's testimony was influenced by Shayna's observation of her mother's reaction to her testimony. Diane, who had been molested herself and who was extremely upset by Shayna's disclosures, testified that she believed Shayna altered some of her testimony at preliminary hearing when she saw her mother's reactions. Diane explained that she was present in the courtroom as a "support person" for Shayna. (Pen. Code, § 868.8.) She "almost fell

apart" watching Shayna using dolls from her bedroom at the preliminary hearing to illustrate what had happened to her. In answer to a question, Shayna stated that it did not hurt when defendant "humped" her.

Diane testified, "whenever Shayna is responding to what happened to her, if she sees me upset or crying or sees that I'm hurting, she stops and she says, no, it didn't. It didn't hurt. So that's what I think has happened."

Nevertheless, the exclusion of the evidence of Shayna's false belief did not result in a miscarriage of justice. The function of the excluded testimony was to impeach the complaining witness's credibility. Ample evidence for this purpose was placed before the jury: it heard evidence of the complaining witness's dream about her mother and defendant kissing, evidence that Shayna altered her testimony to accommodate her mother's sensitivity, and evidence from which it could infer that she had access to the Playboy channel.

In addition, the jury had the opportunity to observe the witnesses including Shayna testify. Defense counsel vigorously argued the issue of Shayna's credibility and the weaknesses in her testimony and that of the prosecution case in general. The jury requested and received reread of Shayna's testimony, her mother's testimony, and Shayna's disclosures to the child protective services worker and the marriage-family-children's counselor. Deliberations and reread took approximately a day and a half.

A trial court has discretion to exclude impeachment evidence if it is collateral, cumulative, confusing, or misleading. (*People* v. *Price* (1991) 1 Cal.4th 324, 412 [3 Cal.Rptr.2d 106, 821 P.2d 610].) The excluded evidence, although admissible and probative, was cumulative. Therefore, although the court erred in excluding the evidence, the error was harmless.

### Violation of a Position of Trust

█ Next, defendant contends that the trial court failed to state and the record does not demonstrate an adequate factual basis for the single aggravating factor the court found applicable, namely, abuse of a position of trust. Defendant states that in a resident child molestation case, the occupation of a position of trust is a factor which is present in virtually all cases. Consequently, it is not a factor which makes this particular case distinctively worse than the average case of resident child molestation.

On this point, the First District Court of Appeal has stated: "A circumstance which is an element of the substantive offense cannot be used as a

factor in aggravation. [Citation.] A sentencing factor is an element of the offense if the crime as defined by statute cannot be accomplished without performance of the acts which constitute such factor. [Citations.]

"The offense involved herein is defined by section 288.5, subdivision (a), in pertinent part, as follows. 'Any person who either resides in the same home with the minor child or has recurring access to the child, who over a period of time, not less than three months in duration, engages in three or more acts of [proscribed] sexual conduct with a child under the age of 14 years at the time of the commission of the offense . . . is guilty of the offense of continuous sexual abuse of a child. . . .' [¶] It is undisputed that appellant was the victim's stepfather and was entrusted with caring for her and her sister. Thus he was placed in a position of trust and confidence regarding the children. Since continuous sexual abuse can be committed by anyone residing in the same home with the children, whether or not they have special status with the victim, such sentencing factor is not an element of the crime." (*People* v. *Clark* (1992) 12 Cal.App.4th 663, 666 [15 Cal.Rptr.2d 709].)

In the instant case, there is overwhelming evidence that defendant was not merely a resident in the same house as Shayna, but was a person in whom she reposed trust and confidence. The court did not err in citing this factor as a circumstance in aggravation.

### DISPOSITION

The judgment is affirmed.

Wunderlich, J., and Mihara, J., concurred.

A petition for a rehearing was denied June 21, 1994, and appellant's petition for review by the Supreme Court was denied August 25, 1994. Mosk, J., was of the opinion that the petition should be granted.