**Leon Richard FRANKLIN, Petitioner–Appellant,**

v.

**Ivalee HENRY, Warden, Respondent–Appellee.**

No. 96–16320.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted March 11, 1997.

Decided Aug. 29, 1997.

Michael A. Kresser, Santa Clara, California, for petitioner-appellant.

George Williamson, Ronald A. Bass, Ronald S. Matthias, Richard Rochman, Attorney General's Office, San Francisco, California, for respondent-appellee.

Before: JOHN T. NOONAN, Jr. and O'SCANNLAIN, Circuit Judges, and RHOADES,* District Judge.

Opinion by Judge NOONAN; Concurrence by Judge O'SCANNLAIN.

NOONAN, Circuit Judge:

Leon "Jamal" Franklin appeals the denial by the district court of his petition for habeas corpus after his conviction in the Santa Clara Superior Court of violation of California Penal Code §§ 288.5(a) and 1203.066(a)(8). Holding that Franklin was denied due process of law by the exclusion of evidence vital to his case, we reverse the district court.

## PROCEEDINGS

Franklin was tried for the sexual abuse of Shayna, a child. The issues on appeal must be evaluated in the context of the evidence at trial, which was as follows:

In 1991, at the time of the incidents in question, Franklin was 46; married but separated from his wife for nine years; in a relationship with Joanne T., with whom he shared a residence in San Jose; and the father of two girls, the younger of whom, Nile, was a year older than five year old Shayna. He had done a variety of jobs, been one of the first blacks hired by Southern Bell, sold advertising space for *Ebony*, and managed the musical career of Willie T.; he had also written songs, several of which had won awards. He had known Shayna's mother Diane since 1978 when she was involved with Willie T.

In the spring of 1991 Franklin wanted to keep Nile in school in the San Jose area but did not want her at the residence with Joanne. Diane, with whom he had resumed

* Honorable John S. Rhoades, Sr., Senior United States District Judge for the Southern District of California, sitting by designation.

contact, invited him and Nile to stay with her and her husband Steve and their three children, Steve, Sean and Shayna. Nile was seen as a playmate for Shayna. Franklin talked with Steve about a business venture. His stay lasted somewhat over four months, from April to August. It appears to have been an arrangement into which Franklin drifted. He was away on weekends, usually seeing Joanne. He babysat Steve, Sean and Shayna when their parents were at work and when the boys were not at school. He continued babysitting even after school ended for Nile and he took her to her mother in Los Angeles. Near the end of July, Steve, Diane's husband, went on a business trip to Japan, and Diane's father and stepmother visited Diane. They indicated their disapproval of Franklin. When Steve returned, there was an undercurrent of sexual tension, marked by Franklin's disavowal of any romantic interest in Diane but also by his reminder to her of his knowledge of her relations with Willie T. In the end Diane asked him to leave, and he did.

Five months later, according to Diane, she overheard Shayna telling her brothers that she hated Jamal. Her mother asked her why; and upon further questioning Shayna said that Jamal had licked her "private" and made her lick his "private". Her mother called the police. When detective Greg Braze arrived, Shayna told him that Jamal had done something "gross" but said nothing further. The detective urged Diane to interview Shayna alone, and she did so for forty minutes. Shayna now amplified her accusations, indicating that the licking acts "had happened lots of times" [RT 539] and that Jamal had been "humping" her; Diane understood her to mean that Jamal had penetrated her vagina with his penis [RT 545].

Shayna later was interviewed by Mary Ritter, a "physician assistant" at the Center for Child Protection at Santa Clara Valley Medical Center. Under Dr. David Kerns she did the medical evaluation of children alleged to have been sexually abused. In particular, she examined Shayna's hymen, the mucous membrane at the opening of the vagina which at her age would be "delicate and thin" [RT 652] and "very sensitive" [RT 653]. Ritter noted that Shayna's hymenal rib was "narrower than I would expect in a child her age." She also observed in conjunction with the narrowing, a "slight asymmetry of the hymenal tissue" [RT 658]. The significance of these signs was that they had "the appearance of a hymen that has been injured and has healed.... Injured by penetration." [RT 661].

Shayna had made no mention of Franklin's conduct while he was living as a guest in her home and acting on occasion as the baby sitter for her and her two older brothers, Sean and Steve. She made her accusations six months after he had left the area. To account for the absence of any contemporary objection by her, the prosecution introduced Sergeant Jeffrey Miller of the police force of the town of Los Gatos. Sergeant Miller was accepted as an expert on child abuse by virtue of his having investigated many cases of alleged abuse, having testified at eighteen to twenty trials, and having studied the work of Roland C. Summit, the inventor of "the Child Sexual Abuse Accommodation Syndrome," or CSAA. According to Sergeant Miller's testimony at trial, "what Summit does is Summit dispels a lot of myths of how we would think children would react and how we would expect them to react when they're confronted with a problem of molestation." [RT 804] The prosecution also submitted some expert medical testimony that Shayna's genitalia showed signs of physical abuse.

Diane, Steve and Shayna's two brothers testified that prior to her accusations she had never shown any hostility toward Jamal or manifested any anxiety in his presence. Her parents bathed her regularly and never noticed any swelling or redness in her vaginal area. A pediatrician who examined her for a bladder infection during the time in question saw no signs of sexual abuse. A psychiatrist, Dr. Lee Coleman, who had made study of the physical evidence of sexual abuse, found her hymen to be normal, i.e., not affected by penetration. A gynecologist, Dr. Jack Silveria, also found her hymen to be normal. The director of the Center for Child Protection at Santa Clara Valley Medical Center, Dr. David Kerns, who testified for the prosecution, conceded on cross that Shayna's hymen was in the upper range of normal. [RT 1424].

Franklin attempted to introduce as evidence his own testimony that Shayna in his presence told her two brothers that the previous night her mother had come into her room and "licked her private." The prosecutor vigorously objected that this evidence was inadmissible under California Evidence Code § 782, which excludes evidence reflecting the complaining witness's willingness to engage in sexual activity. The trial court agreed and instructed the defense that it could not introduce this evidence. For the same reason the trial court also excluded Franklin's statement to the police when first informed of the charges: "If I believed everything the kids said, [Diane] would be in jail herself."

The jury returned a verdict of guilty. Franklin was sentenced to sixteen years' imprisonment. The trial court denied a motion for a new trial. Franklin appealed. The California Court of Appeal for the Sixth District ruled that the trial court had erred in excluding the evidence as to Shayna's accusation of her mother. *People v. Franklin*, 25 Cal.App.4th 328, 30 Cal.Rptr.2d 376 (1994). The court ruled:

> In the instant case, if the trier of fact found it true that Shayna falsely stated that her mother sexually molested her, this statement would be relevant to the trier of fact's determination of her credibility on defendant's culpability. The evidence should have been admitted.

The court of appeal had then to determine whether the error "resulted in a miscarriage of justice." Cal. Evid.Code § 354. The court observed:

> The record shows that the battle for introduction of this evidence was hard-fought. The trial was basically a credibility contest between Shayna and defendant. The physical evidence was ambiguous. Shayna's emotional state during and after the period of alleged molestation was apparently normal. Changes in Shayna's behavior did not begin until after she disclosed the misconduct to her mother. Shayna as well as her brothers missed defendant and appeared happy to see him after he moved out. The evidence was undisputed that Shayna falsely but sincerely believed that she saw her mother and defendant kissing.

In addition, there was evidence to show that the content of Shayna's testimony was influenced by Shayna's observation of her mother's reaction to her testimony. Diane, who had been molested herself and who was extremely upset by Shayna's disclosures, testified that she believed Shayna altered some of her testimony at preliminary hearing when she saw her mother's reactions. Diane explained that she was present in the courtroom as a "support person" for Shayna. (Pen.Code § 868.8). She "almost fell apart" watching Shayna using dolls from her bedroom at the preliminary hearing to illustrate what had happened to her. In answer to a question, Shayna stated that it did not hurt when defendant "humped" her.

Diane testified, "whenever Shayna is responding to what happened to her, if she sees me upset or crying or sees that I'm hurting, she stops and she says, no, it didn't. It didn't hurt. So that's what I think has happened."

Nevertheless, the exclusion of the evidence of Shayna's false belief did not result in a miscarriage of justice. The function of the excluded testimony was to impeach the complaining witness's credibility. Ample evidence for this purpose was placed before the jury; it heard evidence of the complaining witness's dream about her mother and defendant kissing, evidence that Shayna altered her testimony to accommodate her mother's sensitivity, and evidence from which it could infer that she had access to the Playboy channel.

Franklin filed a petition for review in the California Supreme Court raising only one issue: "The exclusion of critical evidence denied petitioner his federal constitutional right to present a complete defense and to subject the prosecution's case to meaningful adversary testing." The Supreme Court of California denied review, Justice Mosk dissenting.

Franklin filed this petition for habeas corpus in the federal district court. Applying the appropriate federal standard, the district court held that the error of the state trial court did not have "a substantial and injurious effect" on the jury's verdict. *Franklin v.*

*Henry,* No. 95–70333, 1996 W.L. 297048, at *5 (N.D.Cal. May 31, 1996). The petition was denied.

Franklin appeals.

## ANALYSIS

*The Existence of Error.* The state court of appeal has determined that it was error to exclude the proffered evidence. That conclusive determination means that the state has no rational justification for what the prosecutor urged and what the superior court did in excluding Franklin's testimony.

*The Existence of Constitutional Error.* The state court of appeal did not determine whether the error was of constitutional magnitude. The issue was presented to the Supreme Court of California which, denying Franklin's petition, decided against him on the merits of his claim. The district court in this case implicitly treated the error as constitutional without, however, explicitly so holding. We hold that under the Constitution of the United States as it has been interpreted by the Supreme Court of the United States, the error was of constitutional magnitude. The explicit testimony bore on the credibility of the only percipient witness against Franklin. If believed by the jury, Franklin's testimony would have shown Shayna capable of fantasies about her mother analogous to the charges she made against Franklin. Exclusion of the evidence deprived Franklin "of the basic right to have the prosecutor's case encounter and 'survive the crucible of meaningful testing.'" *Crane v. Kentucky,* 476 U.S. 683, 690–91, 106 S.Ct. 2142, 2146–47, 90 L.Ed.2d 636 (1986) (quoting *United States v. Cronic,* 466 U.S. 648, 656, 104 S.Ct. 2039, 2044, 80 L.Ed.2d 657 (1984)).

*The Effect of the Error.* Constitutional error was committed, but on collateral review we can grant the writ only if Franklin can show that the error "'had a substantial and injurious effect or influence in determining the jury's verdict.'" *Brecht v. Abrahamson,* 507 U.S. 619, 637, 113 S.Ct. 1710, 1721, 123 L.Ed.2d 353 (1993), (quoting *Kotteakos v. United States,* 328 U.S. 750, 776, 66 S.Ct. 1239, 1253, 90 L.Ed. 1557 (1946)). We have examined the record of the case with this standard in mind. The prosecutor's case was not a strong one. In particular, it relied on the police witness's recitation of Roland Sum-

mit's theory of the Child Sexual Abuse Accommodation Syndrome. CSAAS has been examined by several courts in the context of criminal prosecutions and found wanting. It has been found, in fact, to be an impermissible way of bolstering the credibility of a child witness. *See, e.g., Commonwealth v. Dunkle,* 529 Pa. 168, 602 A.2d 830 (1992). The testimony in this case was offered without objection. Diane herself had been the victim of child abuse and so, as another prosecution police witness admitted, was not the best person to interrogate Shayna on her allegations about Franklin. The physical evidence of abuse was thin and disputed. In the end, the jury could only convict Franklin if they believed Shayna. Consequently any evidence bearing on Shayna's credibility must be regarded as having significance. The excluded evidence could have persuaded the jury that Shayna fantasized about sex. The excluded evidence might have tipped the verdict to acquittal.

At the same time it is difficult to determine that the excluded evidence from Franklin would have shifted the balance. If the jury did not believe him when he forthrightly denied Shayna's testimony, it is difficult to say with assurance that the jury would have believed him on a peripheral matter where Shayna disputed what he had to say.

In short, our minds as to the harmfulness of the error are in equipoise. The error could have been harmless. The error could have been harmful. In grave doubt as to the effect of the error, we must direct the district court to grant the petition. *O'Neal v. McAninch,* 513 U.S. 432, 115 S.Ct. 992, 130 L.Ed.2d 947 (1995).

**REVERSED AND REMANDED.**

O'SCANNLAIN, Circuit Judge, specially concurring:

Although I join in Judge Noonan's thoughtful constitutional analysis, I write separately because I do not believe we need to default based on "grave doubt" as set forth in *O'Neal v. McAninch,* 513 U.S. 432, 115 S.Ct. 992, 130 L.Ed.2d 947 (1995).

The Supreme Court held in *O'Neal* that "when a federal judge in a habeas proceeding

is in grave doubt about whether a trial error of federal law had 'substantial and injurious effect or influence in determining the jury's verdict,' that error is not harmless. And, the petitioner must win." *O'Neal,* 513 U.S. at 436, 115 S.Ct. at 994 (quoting *Brecht v. Abrahamson,* 507 U.S. 619, 637, 113 S.Ct. 1710, 1721, 123 L.Ed.2d 353 (1993) (quoting, and adopting, standard set forth in *Kotteakos v. United States,* 328 U.S. 750, 776, 66 S.Ct. 1239, 1253, 90 L.Ed. 1557 (1946))). Justice Breyer, writing for the majority, emphasized, however, that the circumstance of "grave doubt" is "unusual," and that "[n]ormally a record review will permit a judge to make up his or her mind about the matter." *Id.* at 435, 115 S.Ct. at 994. Justice Thomas further cautioned in dissent that "cases in which habeas courts are in equipoise on the issue of harmlessness are astonishingly rare," and that the Court's rule in *O'Neal* is "not a means for judges to escape difficult decisions." *Id.* at 453–54, 115 S.Ct. at 1002–03 (Thomas, J., dissenting).

I agree with Judge Noonan that this is a difficult case. As he points out, the prosecution's position was not strong and basically came down to the credibility of Shayna as a witness. In my view, however, the fact that Shayna allegedly made an earlier, false claim accusing her mother of sexual abuse in the exact same manner as she accused Franklin would be a crucial factor in determining her credibility. The jury could only convict Franklin if they believed Shayna. Therefore, I believe that the exclusion of the disputed evidence on the credibility of Shayna as a witness indeed had the requisite "substantial and injurious effect or influence in determining the jury's verdict" to warrant issuance of the writ of habeas corpus, *Brecht,* 507 U.S. at 637, 113 S.Ct. at 1721 (quoting *Kotteakos,* 328 U.S. at 776, 66 S.Ct. at 1253), and that we should reverse without reliance on *O'Neal* in deciding this case.