# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION  II

| | |
|---|---|
| STATE OF WASHINGTON, | No.  47339-9-II |
| Respondent, | |
| v. | |
| DEREK MARK LOUGHREY, | UNPUBLISHED OPINION |
| Appellant. | |

JOHANSON, J. — Derek Mark Loughrey appeals his jury trial convictions for three counts of first degree child rape and two counts of first degree child molestation.  On appeal, Loughrey argues that the trial court abused its discretion when it admitted in the State's rebuttal his half-sister's testimony that he had sexually abused her years earlier because he did not "open the door" to rebuttal character evidence and the trial court incorrectly balanced the probative value and prejudice from the testimony under ER 403.  Loughrey also argues that the trial court erred when it failed to enter written findings and conclusions after a CrR 3.5 hearing.  Finally, Loughrey asserts several grounds of error in his statement of additional grounds (SAG)[1] and requests that we waive appellate costs.

---

[1] RAP 10.10.

We hold that the trial court did not abuse its discretion either when it ruled that Loughrey opened the door to his half-sister's rebuttal testimony or when it ruled the testimony was admissible under ER 403. Further, we hold that although the trial court erred when it failed to enter written CrR 3.5 findings and conclusions, the error was harmless. We additionally hold that Loughrey's SAG arguments fail for various reasons. We affirm Loughrey's convictions and waive appellate costs.

FACTS

I. BACKGROUND FACTS

From an early age, NL[2] lived with her father (Loughrey) and her mother. Loughrey sexually abused NL on multiple occasions when NL was between 7 or 8 and 9 years old. In October 2011, 16-year-old NL disclosed the abuse to her boyfriend, Alyn Cheney. Six days later, Loughrey and NL had a heated argument regarding a cell phone. Four days after the argument, NL disclosed the abuse to the police and others.

The State charged Loughrey with three counts of first degree child rape and two counts of first degree child molestation based on five separate acts of sexual abuse.

II. EVIDENTIARY RULINGS

A. CrR 3.5 HEARING

Following a CrR 3.5 hearing, the trial court ruled admissible Detective Sandra Aldridge's description of Loughrey's response when he learned that NL was safe with the police. Loughrey

---

[2] We use the victim's initials to provide some measure of anonymity. Gen. Order 2011-1 of Division II, *In re Use of Initials or Pseudonyms for Child Witnesses in Sex Crime Cases* (Wash. Ct. App.), http://www.courts.wa.gov/appellate_trial_courts.

"hung his head and said, 'Well, as long as she's safe, it doesn't matter why she's at the police department.'" 1B Report of Proceedings (RP) at 311. The trial court did not enter written findings or conclusions, although it orally ruled that the statement was noncustodial and voluntary.

### B. EVIDENCE OF NL'S PRIOR MISCONDUCT

Under ER 404(b), Loughrey moved to admit evidence of NL's misconduct before the fight with Loughrey. Loughrey sought to introduce evidence about NL using drugs, sneaking out, drinking, lying, and forging a grade in order to show an escalating pattern of misconduct. As evidence of a pattern of "striking out," Loughrey also moved to admit NL's foster parents' testimony that after the disclosures, when NL was in foster care, she fought with her foster parents and ran away. 1A RP at 192.

The trial court allowed evidence of misconduct starting in approximately September 2011 and evidence of NL's wish to be emancipated. But the trial court barred any evidence of NL's sexual activity and of older misconduct. The trial court reasoned that the misconduct predating the few months before the disclosures was irrelevant to the defense's theory that NL fabricated her disclosures because of the recent cell phone argument and her desire to be with Cheney. And the trial court ruled that the foster parents' testimony was inadmissible because it was collateral and an improper method to attack NL's character.

### III. TRIAL

### A. STATE'S EVIDENCE

1. NL'S TESTIMONY

NL described multiple incidents in which Loughrey sexually abused her when she was around eight and nine years old. NL testified in detail regarding six distinct incidents and

3

Loughrey's warning not to tell her mother, or he would "go away for a really long time." 2A RP at 413.

NL testified that around seventh grade, she disclosed the abuse to her best friend, Chaylie Holmquist, in secret. In October 2011, when she was 16 years old, NL disclosed the abuse to her boyfriend, Cheney. After the disclosure to Cheney, NL had a "big argument" with Loughrey regarding a cell phone. 2A RP at 477. After the cell phone argument, NL told her school's counselor, a social worker, Jenna and Shelby Hurt, and the police about the abuse.

On cross-examination, NL revealed that she had wanted to be emancipated and to have her own bedroom and that she had been disciplined "more" in high school than in middle school.

2.    DETECTIVE ALDRIDGE'S TESTIMONY

Detective Aldridge testified that she told Loughrey that NL was at the police station. Aldridge described Loughrey's reaction to this news consistent with her CrR 3.5 hearing testimony.

B. LOUGHREY'S TESTIMONY

Loughrey testified that NL wanted her own room and had wanted to be emancipated starting well before her allegations of sex abuse. During the summer of 2011, NL was grounded most of the time and her behavior continued to worsen.[3] A particular point of contention was Loughrey's request that NL contribute some of her paychecks toward the family's expenses. During the cell phone argument, Loughrey told NL that she would be grounded until she turned 18 years old and to quit her job; NL responded, "'We'll see about that, buddy.'" 3A RP at 756.

---

[3] NL's mother also testified for the defense and stated that NL's behavior had "changed from bad to worse" in the few months before NL's disclosures. 3B RP at 852.

Loughrey denied ever sexually abusing NL. During questioning, Loughrey raised his voice and said, "I am not a child molester. I did not do this. She lied. She wanted out and that was her way out. I am telling you, I am not a child molester." 3A RP at 764. When asked if he had ever requested that NL do anything sexual with him, Loughrey said, "Not once. Not ever. It is not who I am. There's nothing more important than to be a good father and a good husband."[4] 3A RP at 765.

## C. ADMISSION OF REBUTTAL CHARACTER EVIDENCE

To rebut Loughrey's testimony, the State moved to admit under ER 404(a) the testimony of his half-sister, AS, that Loughrey had abused her when they were children. The State argued that Loughrey's proclamation that he was not a child molester had opened the door. The State noted that Loughrey's abuse of AS amounted to first degree child rape. Loughrey responded that the door had not been opened and that the evidence was inadmissible under ER 404(a) and ER 403 because it was highly prejudicial and "minimal[ly] probative." 3A RP at 784.

The trial court conducted legal research and discussed relevant authority, including a case discussing ER 403. The trial court determined that Loughrey's statements had opened the door to admit rebuttal character evidence and admitted AS's testimony accompanied by a limiting instruction. The instruction directed the jury to consider AS's testimony only to rebut Loughrey's assertion that he lacked the character trait of someone who would commit the type of crimes alleged in the case.

---

[4] On cross-examination, Loughrey denied any sexual intercourse with his half-sister, AS.

AS testified that she is Loughrey's half-sister and is 2 1/2 years younger than Loughrey. Beginning when she was around 10 or 11 years old and Loughrey was at least 12 years old, Loughrey repeatedly raped AS. On the first occasion, Loughrey used physical force to restrain AS and have oral and vaginal intercourse with AS against her will. On every occasion thereafter, Loughrey had intercourse with AS despite her telling him "no." 4 RP at 958. The abuse continued until AS was around 14 years old and Loughrey was at least 16 years old.

During cross-examination, AS ducked behind the bench so that Loughrey could not see her. Loughrey's attorney, but not Loughrey, moved to where he could see AS.[5]

### IV. CLOSING ARGUMENT, CONVICTIONS, AND SENTENCE

In closing, Loughrey argued that NL was approaching being in "open rebellion" and had fabricated her account because she wanted to move out of her parents' home. 4 RP at 1036. He claimed that AS was afraid to look Loughrey in the eye during her testimony because she was lying.

The jury found Loughrey guilty of the three charges of first degree child rape and the two charges of first degree child molestation. The trial court sentenced Loughrey to 318 months of total confinement to a maximum of life. Loughrey appeals his convictions.

---

[5] Loughrey subsequently claimed that he could not see AS during most of her testimony and moved for a new trial on the basis that his right to confrontation had been violated. The trial court denied the motion.

## ANALYSIS

### I. REBUTTAL CHARACTER EVIDENCE

#### A. "OPENING THE DOOR" UNDER ER 404(A)

Loughrey argues that the trial court abused its discretion when it ruled that Loughrey opened the door to admit evidence of prior sexual misconduct when he declared that he was "'not a child molester'" during his testimony. Br. of Appellant at 9-10. We disagree.

1. APPLICABLE LAW

We review the trial court's decision to admit evidence under ER 404(a) for an abuse of discretion. *City of Kennewick v. Day*, 142 Wn.2d 1, 5, 11 P.3d 304 (2000).

ER 404(a) generally bars the use of evidence of a person's character trait to show "action in conformity therewith." However, if the defendant offers evidence of a pertinent character trait, the defendant opens the door for the prosecution "to rebut the same." ER 404(a)(1).

2. GENERAL CHARACTER TRAIT AND NOT MERELY A REFERENCE TO NL

Loughrey contends that he did not put at issue whether he was a child molester because he stated only that he had not molested *NL.* Loughrey claims his testimony did not amount to evidence that he had not molested other children. We disagree.

Here, Loughrey made two statements that the trial court ruled were affirmative assertions of Loughrey's character of not being a child molester. Loughrey stated, "I am not a child molester. . . . I am telling you, I am not a child molester." 3A RP at 764. And when Loughrey's attorney asked if Loughrey had ever asked NL to do anything sexual with Loughrey, he stated, "Not once. Not ever. *It is not who I am.* There's nothing more important than to be a good father and a good husband." 3A RP at 765 (emphasis added).

Loughrey argues that the trial court erred because these statements specifically related to NL and thus were not assertions of being a nonchild molester. Division One rejected a similar argument in *State v. Warren*, where the defendant argued that his statement that he did not touch the victim's intimate areas "'because . . . she is a girl'" was merely a denial of inappropriately touching the victim and not an assertion of good character. 134 Wn. App. 44, 64, 138 P.3d 1081 (2006), *aff'd*, 165 Wn.2d 17, 195 P.3d 940 (2008). The court held that it was no abuse of discretion for the trial court to rule that this evidence opened the door under ER 404(a) because the "only reasonable interpretation" of the defendant's testimony was that he was not the type of person to touch a child sexually. *Warren*, 134 Wn. App. at 65.

As in *Warren*, the trial court here reasonably interpreted Loughrey's statements as an assertion that he was not the type of person who would molest a child. Loughrey's statements went beyond merely asserting that he had not molested *NL* to asserting the character trait of not being a child molester.[6] We hold that the trial court did not abuse its discretion when it ruled that Loughrey made a general assertion about his character trait of not being a child molester.

---

[6] Loughrey also argues that he made at most merely a "passing reference" to his character, relying on *State v. Avendano-Lopez*, 79 Wn. App. 706, 904 P.2d 324 (1995), and *State v. Stockton*, 91 Wn. App. 35, 955 P.2d 805 (1998). Br. of Appellant at 10. But these cases are distinguishable—here, Loughrey twice repeated his emphatic proclamation that he was "not a child molester." 3 RP at 764. His testimony was not a mere "passing reference."

3.    PERTINENT CHARACTER TRAIT

Loughrey argues that the testimony about his alleged rape of AS concerned a "collateral,"

or irrelevant, matter.[7]  Br. of Appellant at 13.  We reject Loughrey's argument.

ER 404(a)(1) allows the admission of evidence of *pertinent* character traits for the purpose

of proving action in conformity therewith when offered by an accused or "by the prosecution to

rebut the same."  *Pertinent* is synonymous with *relevant*; pertinent traits are those that tend to

make the existence of a material fact more or less probable.  *Day*, 142 Wn.2d at 6 (quoting *State

v. Eakins*, 127 Wn.2d 490, 495-96, 902 P.2d 1236 (1995)).  The character trait at issue here—

whether Loughrey is the type of person who would molest a child—if proven, makes it more likely

that Loughrey would have molested NL.  Thus, the evidence concerned a pertinent trait.  *See Day*,

142 Wn.2d at 6.  Further, at trial, Loughrey apparently believed his testimony was very pertinent—

he emphatically told the jury, "I am not a child molester."  3A RP at 764.  Having gained the

benefit of that assertion at trial, he cannot now challenge that the testimony as not "pertinent."  We

hold that it was not an abuse of discretion for the trial court to rule that Loughrey made an assertion

regarding a pertinent character trait.

4.    FALSE IMPRESSION

Loughrey contends that even if we hold that he made a general assertion about not being a

child molester, that assertion was true because Loughrey had never been charged with a prior

---

[7] Loughrey appears to refer to the requirement that impeachment evidence not regard a collateral—
or irrelevant—matter.  In *State v. Fisher*, the court held that evidence that a defendant had
*physically* abused other children after he allegedly *sexually* abused the victim was "collateral" and
therefore could not be admitted for impeachment purposes.  165 Wn.2d 727, 750-51, 202 P.3d 937
(2009).  As discussed, we analyze whether the evidence was *pertinent* under ER 404(a)(1).

molestation. Because no false impression was created, Loughrey argues, it was an abuse of discretion for the trial court to hold that Loughrey had opened the door. Again, we disagree.

The rationale underlying the admission of evidence through ER 404(a)(1)'s open door is fairness. *State v. Gallagher*, 112 Wn. App. 601, 610, 51 P.3d 100 (2002). The defendant should not be allowed to "paint[] a false picture" by introducing propensity evidence that the State cannot rebut. *Gallagher*, 112 Wn. App. at 610. Thus, the State may pursue the subject only "to clarify a false impression." *State v. Fisher*, 165 Wn.2d 727, 750, 202 P.3d 937 (2009).

Loughrey did not qualify his statements by saying, for instance, that he was "not a *convicted* child molester" or had never been "*charged with* molesting a child." Rather, Loughrey stated that he was not the type of person who would molest a child. Without AS's testimony, the jury would be left with the impression that Loughrey would never molest a child, regardless of whether he was ultimately caught or convicted of the crime of child molestation. This is the very type of "false picture" that the open-door doctrine seeks to avoid. *See Gallagher*, 112 Wn. App. at 610. We hold that the trial court did not abuse its discretion when it ruled that Loughrey had created the false impression that he was not a child molester and thus that Loughrey opened the door for the State to introduce rebuttal character evidence.

B. PREJUDICE UNDER ER 403

Loughrey argues that the trial court failed to perform an ER 403 analysis to determine whether AS's testimony was admissible. Because the danger of unfair prejudice allegedly substantially outweighed the testimony's probative value, Loughrey claims that it was an abuse of discretion to admit AS's testimony. We disagree.

1.      ER 403 BALANCING PERFORMED

Loughrey argues that the trial court failed to perform an ER 403 analysis after it determined that Loughrey had opened the door for rebuttal character evidence. We disagree.

When the trial court decided to admit AS's testimony, it did not conduct the balancing analysis on the record.[8] However, the trial court mentioned ER 403 when it discussed the legal authority relevant to its decision. Further, the trial court made its decision after hearing argument from both parties as to whether the evidence was probative and prejudicial. Because it is clear that the trial court considered ER 403 when it decided to admit AS's testimony, we reject Loughrey's claim.

2.      NO ABUSE OF DISCRETION

Loughrey argues that if we hold that the trial court conducted an ER 403 balancing analysis, we should hold that the trial court abused its discretion when it admitted AS's testimony under ER 403. We reject Loughrey's argument.

a.      STANDARD OF REVIEW AND APPLICABLE LAW

A trial court has "considerable" discretion when it determines whether evidence is admissible under ER 403. *State v. Barry*, 184 Wn. App. 790, 801, 339 P.3d 200 (2014). The trial court abuses its discretion when its decision is "'manifestly unreasonable, or exercised on untenable grounds, or for untenable reasons.'" *Barry*, 184 Wn. App. at 802 (quoting *State v. Rice*, 48 Wn. App. 7, 11, 737 P.2d 726 (1987)).

---

[8] Loughrey argues that the trial court entirely failed to conduct an ER 403 balancing analysis, not that the analysis should have been conducted on the record. We note that a trial court need not conduct the balancing analysis on the record when it admits evidence under ER 403. *State v. Gould*, 58 Wn. App. 175, 184, 791 P.2d 569 (1990).

Under ER 403, the trial court may exclude evidence if the evidence's "probative value is substantially outweighed by the danger of unfair prejudice." Prior similar acts of sexual abuse are generally "'very probative'" and the "'need for such proof is unusually great in child sex abuse cases.'" *State v. Kennealy*, 151 Wn. App. 861, 890, 214 P.3d 200 (2009) (quoting *State v. Krause*, 82 Wn. App. 688, 696, 919 P.2d 123 (1996)). A danger of unfair prejudice exists when evidence is "'likely to stimulate an emotional response rather than a rational decision.'" *State v. Beadle*, 173 Wn.2d 97, 120, 265 P.3d 863 (2011) (quoting *State v. Powell*, 126 Wn.2d 244, 264, 893 P.2d 615 (1995)).

b. PROBATIVE

Loughrey argues that AS's testimony was minimally probative to rebut the professed character trait of not being a child molester because it was evidence of acts that occurred more than 35 years before the trial. We disagree.

AS testified that beginning when she was 10 or 11, Loughrey, who is 2 1/2 years older than AS, repeatedly had forcible sexual intercourse with AS. The abuse continued until AS was around 14 years old. If believed, AS's testimony established that Loughrey sexually abused AS, a child under 12, when Loughrey was over 24 months older than AS—actions which constitute first degree child rape. *See* RCW 9A.44.073. AS's testimony was therefore probative to rebut Loughrey's professed character trait of not being a child molester. Thus, we hold that the trial court had tenable grounds to conclude AS's testimony was more than minimally probative.

c. PREJUDICIAL

Loughrey argues that AS's testimony was highly prejudicial because it consisted of allegations of sexual misconduct against a child that are likely to prompt the jury to convict

Loughrey based on an emotional response. We hold that the trial court could tenably conclude otherwise.

While the testimony posed a danger of prejudice, we note that the trial court instructed the jury that it was to consider AS's testimony only for the purpose of rebutting Loughrey's assertion that he lacked the character trait of being a child molester. It was tenable for the trial court to conclude that although the testimony was prejudicial, it was not more prejudicial than it was probative regarding the pertinent character trait of not being a child molester.

d.       ER 403 BALANCING—CONCLUSION

Loughrey argues that the trial court abused its discretion because AS's testimony was so prejudicial that the danger of unfair prejudice substantially outweighed the testimony's probative value. We disagree.

Under ER 403, the trial court may exclude evidence if the evidence's "probative value is substantially outweighed by the danger of unfair prejudice." Under this standard, evidence should not be excluded if its probative value is equal to the danger of unfair prejudice. *See* ER 403; 5 KARL B. TEGLAND, WASHINGTON PRACTICE: EVIDENCE LAW AND PRACTICE § 403.2, at 433 (6th ed. 2016).

As discussed, it was tenable for the trial court to conclude that although AS's testimony was prejudicial, it was also highly probative regarding Loughrey's professed character trait of not being a child molester. The trial court had tenable grounds and reasons to conclude that because the danger of unfair prejudice and the probative value were equal, AS's testimony was admissible. We accordingly hold that the trial court did not abuse its discretion when it admitted AS's testimony under ER 403.

## II. CrR 3.5 WRITTEN FINDINGS AND CONCLUSIONS

Loughrey contends that the trial court erred when it did not reduce to writing its oral ruling under CrR 3.5 regarding the admissibility of his statement. Under CrR 3.5(c), the trial court has the duty to make a record after a CrR 3.5 hearing.[9] Here, the record contains no written findings and conclusions. We agree that the trial court erred and turn to whether the error merits remand for entry of written findings and conclusions.

Loughrey argues that we should "remand this matter to the trial court for entry of the findings and conclusions required by CrR 3.5(c)." Br. of Appellant at 19. We disagree.

In the context of CrR 3.5(c), the trial court's failure to enter written findings and conclusions is harmless error if the court's oral findings are sufficient for appellate review. *State v. France*, 121 Wn. App. 394, 401, 88 P.3d 1003 (2004).

Loughrey premises his argument on the basis of an incorrect understanding of the law. There is no rule that the appellate court will automatically remand a matter for entry of written findings of fact and conclusions of law where the complaining party fails to show harm.

Here, the record reveals that the trial court explained that it admitted Loughrey's statement to Detective Aldridge because it was not made during a custodial interrogation and was not involuntary. This oral ruling is sufficient for our review.[10] Thus, not only does Loughrey fail to allege any prejudice, but the record clearly shows that Loughrey could not have suffered any

---

[9] "After the hearing, the court shall set forth in writing: (1) the undisputed facts; (2) the disputed facts; (3) conclusions as to the disputed facts; and (4) conclusion as to whether the statement is admissible and the reasons therefor." CrR 3.5(c).

[10] We note that Loughrey does not claim that the trial court erred when it admitted his statement to Detective Aldridge.

prejudice. We reject Loughrey's request that we remand the matter to the trial court for the entry of written findings and conclusions.

## III. SAG ISSUES

### A. CONFRONTATION CLAUSE

Loughrey asserts that because AS hid to the side of the witness box during her testimony, his Sixth Amendment right to confront the witness against him as guaranteed by the federal constitution was violated. We disagree.

We review de novo a claim that the confrontation clause was violated. *State v. Jasper*, 174 Wn.2d 96, 108, 271 P.3d 876 (2012). The confrontation clause is not literally construed so as to require a physical, face-to-face confrontation between the defendant and the speaker.[11] *State v. Foster*, 135 Wn.2d 441, 456, 957 P.2d 712 (1998) (citing *Maryland v. Craig*, 497 U.S. 836, 847, 110 S. Ct. 3157, 111 L. Ed. 2d 666 (1990)). The United States Supreme Court has held that the right to confront the witnesses against one does not guarantee the "*absolute* right to a face-to-face meeting" but reflects a *preference* for face-to-face confrontation at trial. *Craig*, 497 U.S. at 844, 849. The confrontation clause guarantees the witness's physical presence, her subjection to cross-examination, and observation of her demeanor by the trier of fact. *Foster*, 135 Wn.2d at 456 (citing *Craig*, 497 U.S. at 845-46).

---

[11] Our State's confrontation clause, unlike its federal counterpart, provides for the defendant's right to meet the witnesses against him "face to face." WASH. CONST. art. I, § 22; *but see State v. Pugh*, 167 Wn.2d 825, 836, 225 P.3d 892 (2009) ("[T]he state confrontation clause has not 'been read literally.'" (quoting *State v. Ryan*, 103 Wn.2d 165, 169, 691 P.2d 197 (1984))). Regardless, Loughrey argues that his federal, not his state, right to confrontation was violated.

Alleged confrontation clause violations are subject to harmless error analysis. *Jasper*, 174 Wn.2d at 108. Error is not harmless if we discern "'beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained.'" *Jasper*, 174 Wn.2d at 117 (quoting *Chapman v. California*, 386 U.S. 18, 24, 87 S. Ct. 824, 17 L. Ed. 2d 705 (1967)).

Here, during cross-examination, AS ducked behind the edge of the bench so that Loughrey could not see her face. The trial court then instructed Loughrey's attorney (but not Loughrey) to move to a position from which he could see AS. After trial, Loughrey moved for a mistrial because Loughrey claimed that he personally could not see AS during most of her testimony.

First, we note that Loughrey makes no claim—and the record does not suggest—that the trier of fact could not see AS or that Loughrey's ability to cross-examine AS was somehow impaired. Thus, Loughrey does not assert that the confrontation clause's core guarantees were somehow violated. Rather, Loughrey's assertion rests on a literal interpretation of the right to "face-to-face" confrontation of his accuser. But the Supreme Court has rejected such a strict interpretation of the confrontation clause. *See Craig*, 497 U.S. at 847. Thus, Loughrey fails to show that he was deprived of his right to confront the witness against him.

Second, it is apparent beyond any reasonable doubt that the error did not contribute to the verdict. *See Jasper*, 174 Wn.2d at 117. In fact, Loughrey argued that AS's hiding her face bolstered the defense's case and impugned AS's credibility. In closing, Loughrey argued that AS's hiding her face implied that she was ashamed to look Loughrey in the eye because she was lying. Accordingly, we hold that any error in this regard was harmless. We reject Loughrey's assertion that the confrontation clause was violated.

### B. EXCLUSION OF FOSTER PARENTS' TESTIMONY

Loughrey asserts that it was not harmless error for the trial court to bar NL's foster parents from testifying.[12] We disagree.

We review the trial court's evidentiary decisions for abuse of discretion. *Day*, 142 Wn.2d at 5, 8. Evidentiary error requires reversal only if the error is not harmless; that is, if there is a reasonable probability that had the evidence been introduced, it would have materially affected the outcome. *State v. Everybodytalksabout*, 145 Wn.2d 456, 468-69, 39 P.3d 294 (2002) (quoting *State v. Stenson*, 132 Wn.2d 668, 709, 940 P.2d 1239 (1997)).

Character evidence is generally disallowed to prove action in conformity therewith. ER 404(a). In particular, evidence of a victim's specific acts is inadmissible to show the victim's character and that the victim acted in conformity with that character. *State v. Munguia*, 107 Wn. App. 328, 335, 26 P.3d 1017 (2001) (quoting *State v. Bell*, 60 Wn. App. 561, 564, 805 P.2d 815 (1991)).

At trial, Loughrey moved to admit NL's foster parents' testimony that NL fought with her foster parents and ran away with Cheney. Loughrey argued that this extrinsic evidence of specific acts of misconduct would undermine NL's credibility and show that she had a pattern of "striking

---

[12] Loughrey argued before the trial court that the foster parents would testify about NL's misbehavior, but now Loughrey claims that the foster father would have testified that NL made allegations of abuse against him in retaliation for being disciplined. Loughrey does not argue that the foster father's testimony's exclusion was manifest error affecting a constitutional right. Thus, Loughrey waived his argument about the foster father's testimony regarding alleged false accusations on appeal. *See* RAP 2.5(a)(3). And to the extent that Loughrey relies upon matters outside the record, this issue is not properly before us. RAP 10.10(c).

out" when she did not get her way. 1A RP at 192. The trial court declined to admit the evidence because it was collateral and an improper method of attacking NL's character.

The admission of the foster parents' testimony was the type of extrinsic evidence of specific acts of misconduct that ER 404 bars. *See Munguia*, 107 Wn. App. at 335. Thus, the trial court properly declined to admit the proffered extrinsic evidence of NL's misconduct. Because the trial court did not abuse its discretion, Loughrey's claim that there was error meriting reversal fails.

Further, Loughrey introduced other evidence of misconduct that supported Loughrey's defense that NL had fabricated her disclosures as retaliation for her parents' escalating pattern of punishment leading up to November 2011. For instance, Loughrey testified that NL was grounded for most of the summer leading up to the disclosures and that her behavior continued to worsen. And NL's mother testified that NL's behavior in the two months preceding her disclosures had changed from "bad to worse." 3B RP at 852. In light of the other evidence at trial, even if it were error, excluding the foster parents' testimony did not materially affect the outcome of the trial. Thus, any error in excluding the foster parents' testimony was harmless.[13]

---

[13] Loughrey relies upon *Franklin v. Henry*, 122 F.3d 1270 (9th Cir. 1997), *overruled by Payton v. Woodford*, 299 F.3d 815 (9th Cir. 2002), to argue that the error was not harmless. But that case is distinguishable; here, the evidence which Loughrey sought to introduce not only was properly excluded, but its admission would not have materially affected the outcome.

## C.  EXCLUSION OF OTHER EVIDENCE OF NL'S MISCONDUCT

Loughrey asserts that the trial court's decision to exclude evidence of NL's misconduct before November 2011[14] violated his right to due process and to present a defense.  Loughrey claims that the excluded evidence showed a pattern of misconduct between 2008 and 2011, including NL's drinking and drug abuse, sneaking out, and "full rebellion" against her parents.  SAG at 2.  We assume without deciding that the exclusion of this other evidence of NL's misconduct was error and reject Loughrey's assertion.

We review de novo the alleged denial of the right to present a defense.  *State v. Jones*, 168 Wn.2d 713, 719, 230 P.3d 576 (2010).  A defendant has the right to due process, including the right to a fair opportunity to defend against the State's accusations and the right to present a defense.  *Jones*, 168 Wn.2d at 720 (quoting *Chambers v. Mississippi*, 410 U.S. 284, 294, 98 S. Ct. 1038, 35 L. Ed. 2d 297 (1973)).  But constitutional error in this regard is harmless if the court is "'convinced beyond a reasonable doubt that any reasonable jury would have reached the same result without the error.'"  *Jones*, 168 Wn.2d at 724 (quoting *State v. Smith*, 148 Wn.2d 122, 139, 59 P.3d 74 (2002)).

The trial court's ruling did not prevent Loughrey from introducing evidence at trial of a pattern of misconduct leading up to the time of the disclosures.  NL testified that she had been disciplined more during high school than in middle school.  Loughrey testified that in the summer

---

[14] Loughrey asserts that the trial court erred when it limited the defense's testimony to "only things that happened the 5 days between" the cell phone argument and NL's disclosures.  SAG at 2.  We note that the trial court in actuality ruled that evidence of NL's misconduct predating September 2011—two months before the disclosures—was inadmissible.  The trial court also barred all evidence of NL's sexual activity and allowed all evidence of NL's wish to be emancipated.

of 2011, NL was grounded more often than not and fought with Loughrey about matters including his request that she give the family money from her paycheck. During closing argument, Loughrey was able to argue based on the trial evidence that there had been escalating punishment of NL by her parents and that NL was "getting to the point of being in open rebellion." 4 RP at 1036.

Thus, even if we assumed without deciding that the trial court erred in excluding this evidence, the other evidence before the jury provided support for Loughrey's defense that NL had fabricated her disclosures in retaliation for the escalating pattern of punishment from her parents. Allowing evidence that NL had been caught abusing drugs and alcohol or had "sneaked out" would not have changed the outcome of the trial. We hold that any error was harmless.

## IV. APPELLATE COSTS

Loughrey requests that we exercise our discretion to decline to award the State its appellate fees.[15] We grant Loughrey's request.

RAP 14.1(a) provides that the appellate court determines costs. Under RAP 15.2(f), we presume a party remains indigent unless the trial court finds that the party's financial condition has improved. We have broad discretion to grant or deny appellate costs to the substantially prevailing party. *See* former RCW 10.73.160(1) (1995). Ability to pay is a factor in the exercise of that discretion. *State v. Sinclair*, 192 Wn. App. 380, 389, 367 P.3d 612, *review denied*, 185 Wn.2d 1034 (2016).

---

[15] On November 15, 2016, Loughrey filed a supplemental brief addressing appellate costs. *See* Order Granting Suppl. Briefing Relating to Appellate Costs, *State v. Loughrey*, No. 47339-9-II (Wash. Ct. App., Nov. 29, 2016).

No. 47339-9-II

The trial court sentenced Loughrey to a minimum of 318 months and a maximum of life in confinement. The trial court also entered an order of indigency. We exercise our discretion and decline to award appellate costs to the State.

We affirm Loughrey's convictions and deny appellate costs.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

JOHANSON, J.

We concur:

MAXA, A.C.J.

MELNICK, J.

21