Filed 2/26/26  P. v. Galindo CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

### IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

### FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>NICHOLAS CHRISTOPHER GALINDO,<br><br>    Defendant and Appellant. | F088140<br><br>(Super. Ct. No. MCR068194)<br><br>**OPINION** |

-ooOoo-

APPEAL from a judgment of the Superior Court of Madera County.  Dale J. Blea, Judge.

Law Office of Jeremy M. Dobbins and Jeremy M. Dobbins for Defendant and Appellant.

Rob Bonta, Attorney General, Charles C. Ragland, Chief Assistant Attorney General, Kimberley A. Donohue, Assistant Attorney General, Eric L. Christoffersen, and John Merritt, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

## INTRODUCTION

Nicholas Christopher Galindo (appellant) molested two girls: L., his stepdaughter, and C., who took private softball lessons from him. The molestation took place when L. was between the ages of nine and 12, and when C. was between the ages of 14 and 16.

A jury convicted appellant of 16 child molestation offenses. As to L., appellant was convicted of three counts of committing a lewd act upon a child under the age of 14 (Pen. Code, § 288, subd. (a); counts 1, 2 & 6)[1] and two counts of committing a forcible lewd act upon a child under the age of 14 (§ 288, subd. (b)(1); counts 3 & 5). As to C., appellant was convicted of six counts of committing a lewd act upon a child aged 14 or 15 (§ 288, subd. (c)(1); counts 7–11, 13), two counts of oral copulation of a person under age 16 (§ 287, subd. (b)(2); counts 14 & 15), two counts of oral copulation of a person under age 18 (§ 287, subd. (b)(1); counts 12 & 16), and sexual penetration with a person under age 18 (§ 289, subd. (h); count 17). The trial court sentenced appellant to an aggregate term of 33 years four months in state prison.

Appellant raises numerous claims on appeal. His challenges relate to the denial of his pretrial severance motion, the sufficiency of the evidence, evidentiary issues, the statute of limitations, amendment of the information, and sentencing. We reject his claims of error and conclude that substantial evidence supported his convictions. We affirm.

## BACKGROUND

### I.       Molestation of L.

L. was born in 2003. She was 20 years old at the time of trial. Appellant was her stepfather. He was born in 1979. Appellant was married to L.'s mother for 10 years, beginning when L. was four or five years old. They lived together in a house in Madera, along with L.'s brother, who is three years older than her.

---

[1]      All further statutory references are to the Penal Code unless otherwise indicated.

L. testified that she was nine years old when appellant first engaged in inappropriate conduct with her. She described an incident where appellant told her to take a shower and asked if she wanted him to join her. L. declined and told appellant she did not want him to come in. After she exited the shower, appellant commented that her skin was soft and that she smelled good.

Sometime after the shower incident, when L. was still nine years old, appellant touched L. while she was on the couch. L. explained that appellant laid her on top of him with her body facing upward, then put his hand in her pants and touched her vagina. As this occurred, she could feel his erect penis on her back.

L. testified that appellant touched her in this manner two to three times per week between the ages of nine and 12. The touching generally occurred when she returned home from school. She was typically home alone with appellant after school for about 90 minutes because her brother was dismissed later and her mother worked regular hours. He would stop touching her when her brother or mother got home. Appellant sometimes told her, " 'I have you and your mom,' " which she understood to mean that he could use either of them to satisfy himself sexually. Appellant also told her that when she turns 16 years old, she will "be begging [him]" for it.

Appellant touched L. a couple of times in the laundry room. L. described one such incident that occurred when she was 11 years old. Appellant approached her from behind and put his hand under her dress and told her she smelled good. He touched her vagina for five to 10 minutes, then pushed her away when he heard the garage door open, which indicated L's mother had returned home.

L. testified appellant made her touch him two or three times. On one occasion, when she was 11 years old, she came home and found appellant watching television on the couch. She sat down next to appellant because she thought they were going to have "stepdad and [L.] time." Appellant exposed his erect penis, grabbed her hand, and held it on his penis. He told her, "This is what guys like," and guided her hand to rub it. L. did

3.

not try to pull her hand away because she was used to appellant's abuse and instead "froze and let him do whatever." Appellant stopped when L.'s brother returned home. Appellant did not ejaculate.

On another occasion, when L. was 11 years old, appellant touched her breasts. That afternoon, she came home from school in her P.E. clothes. L. testified appellant brought her into his room, sat on a small couch, and positioned her between his legs. He then lifted her shirt and training bra and put his mouth on her breasts.

In a separate incident, after L. returned home from school, appellant instructed her to wait in the living room while he went into his bedroom. Concerned, L. peeked into the bedroom and saw appellant take out a condom from a dresser drawer. Appellant made motions consistent with putting on the condom, but L. could not see his penis because he was facing away from her. Appellant looked back at her, then continued to do what he was doing. L. turned and ran to her brother, who had come home early, and appellant closed the bedroom door and did not come out.

L. explained that when the abuse began, she thought it was normal because she did not have a relationship with her biological father. During one molestation incident, when she was 11 years old, appellant told her, " 'If you ever want me to stop, I'll stop.' " L. responded that she did not want him to touch her anymore. Appellant did not touch her for about a week but then resumed the abuse.

When L. was nine years old, appellant told her not to tell her friends that he was touching her because he could get in trouble. When she was 11 or 12 years old, he told her that if she told anyone, he would hurt her mother, her brother, and her cat. Appellant was strict with L. and her brother and said he did not like kids.

L. often spent time at appellant's batting cage business. On one occasion, when she was 12 years old, appellant asked for help cleaning the bathroom. Once they were alone, appellant asked her if she wanted to "do it here," and she ran out of the bathroom.

4.

L. explained that at this point she was "fed up" because she was old enough to understand "what was going on."

Appellant and L.'s mother divorced when L. was in seventh grade, after her mother discovered appellant's relationship with C. L. last saw appellant in May 2017. Her mother remarried in 2019.

L. disclosed appellant's abuse to her therapist in September 2020. She was initially afraid to disclose because she knew the therapist was a mandatory reporter, but she did so with the encouragement of her boyfriend. The therapist reported the abuse to child protective services, and about a month later, the police contacted L.

L. testified she never discussed the abuse with her mother. She stated she has had no contact with C. since she was 12 years old, and her disclosure to her therapist had nothing to do with C.

## II. Molestation of C.

C. was born in 2000. She was 24 years old at the time of trial. C.'s father was friends with appellant. She first met appellant at her quinceañera.

When C. was 15 years old, her father hired appellant to give C. private softball lessons because she wanted to make her high school team. She attended lessons at appellant's batting cage business five days per week during her sophomore and junior years, when she was 15 and 16 years old.

C. testified that, at first, the lessons proceeded normally. However, one day, while she was hitting balls off a tee, appellant commented that her sports bras were too small, which made her uncomfortable. Appellant also regularly complimented her eyes and told her she looked more mature than her age.

During another lesson, C. mentioned she was having problems with her boyfriend, and appellant told her that he could treat her better. At the end of the lesson, when the lights were turned off in the batting cages, appellant pulled her close and kissed her. Nothing else happened that night, and appellant gave her a ride home.

The next day, at the end of the lesson, appellant took her to a strength training area in the back, out of view of the front of the business. There, appellant kissed her, then laid her down on a weightlifting bench, put his mouth on her vagina, and digitally penetrated her. Appellant put on a condom and put his penis in her vagina. After about five minutes, he said he ejaculated, then went to the restroom and flushed the condom. Afterward, appellant walked C. to the batting cage snack area and gave her a sports drink, telling her she needed to get her electrolytes up.

C. testified that she had sexual intercourse with appellant more than 40 times, most often at the batting cages. At the time, C. thought she was in love with appellant. However, she was so scared that she did not tell anyone about appellant, even her close friends.

C. described a similar incident that occurred after one of her softball games when she was still 15 years old. Appellant picked her up and took her to the batting cages. Instead of additional practice, appellant took her to the strength training area, where he orally copulated and digitally penetrated her before inserting his penis into her vagina.

C. estimated she had sexual contact with appellant in his car five times. On one occasion, when she was 15 years old, appellant drove her to a park in his truck. He put the middle seat down so she could be closer to him. After he grabbed her breasts, digitally penetrated, and orally copulated her, he put on a condom, and she got on top of him. He did not ejaculate and told her she was "sending him home with blue balls."

On another occasion, when C. was 15 years old, appellant told C.'s parents he would give her a ride home from the batting cages. Appellant drove C. somewhere and parked. He removed his erect penis so she could orally copulate him, and she did.

When C. was 16 years old, she had sexual intercourse in a building where appellant used to operate a tanning business. Appellant opened the door to the building with his key then led her to an area where a blanket had been laid out. There, appellant digitally penetrated and orally copulated her, and they had vaginal intercourse two times.

6.

Appellant joked that he was not wearing a condom, but C. could not tell because she did not look.

C. also testified that appellant had sexual intercourse with her at his house two times when she was 16 years old. The first time, he picked her up, and they entered the house through the garage. Appellant told her that his family was out of town. She was nervous, and he made her an alcoholic beverage. After they went into his room, appellant digitally penetrated and orally copulated her, then attempted to put his penis inside of her anus. C. told him no, and they had vaginal intercourse.

On the second occasion at appellant's house, they quickly had sexual intercourse because C. was supposed to be practicing at the batting cages. They went into appellant's bedroom, and he put on music. As before, he digitally penetrated and orally copulated her, then had vaginal intercourse. Afterward, C.'s father called her on the phone, which made her nervous.

Sometime later, when C. was 16 years old, L.'s mother came to her family's residence to confront them about her regular text messages with appellant. C. testified she told L.'s mother "everything." That night, C. called appellant. Appellant became upset and asked her, "[W]hy would [you] do that, you were just a friend." C. never spoke to appellant or L.'s mother again.

Several years later, in September 2020, appellant sent C. a message on social media. She testified that she did not follow appellant on social media and had not had any other form of contact with him. The message read: "Hi #22. I just wanted to say I'm sorry for everything." C. explained that 22 was her softball number and that appellant referred to her as "#22" in person and in text messages.

About one month after C. received the social media message from appellant, she was contacted by the police.

## III.    Law Enforcement Investigation.

A Madera Police Department sex crimes detective was assigned in October 2020 to investigate L.'s allegations of sexual abuse by appellant. As part of the investigation, the detective conducted a pretext call between L. and appellant. A recording of the call was admitted into evidence and played for the jury.

In the call, L. told appellant she was attending therapy and decided it would be best to forgive him for the things he did to her when she was younger. Appellant responded that he was not "good" to L. or her brother, admitting that he yelled at and grounded them frequently, and that they were "terrified" of him. L. clarified she was referring to appellant touching her when her mother was gone. Appellant replied that he did not "remember any of that," and repeatedly stated, "[I]t's not something I would do." L. asked appellant how he could not remember the touching because it happened so often and for so long. She also noted that she "always kept quiet because that's what I was told." Appellant repeatedly apologized but continued to maintain that he did not recall touching her and would not have done so.

During the investigation of appellant's abuse of L., her mother told the detective about C. The detective called C. and asked her if appellant had ever touched her inappropriately, and C. started crying. Soon after the call, the detective interviewed C. in person.

## IV.   Defense Evidence.

### A.    *Appellant's family members*.

Appellant's father regularly worked at appellant's batting cage business and often saw L. and C. there. He testified he never saw appellant do anything inappropriate with L. or C.

Appellant's sister testified that she occasionally babysat L. and her brother and never observed appellant engage in inappropriate conduct with L. She opined that

8.

appellant and L. appeared to have a good relationship, but acknowledged she did not spend much time with the family.

## B.     *L.'s mother.*

L.'s mother testified she first learned of L.'s allegations against appellant when child protective services came to her house in September 2020. She did not discuss the allegations with L. and denied helping her prepare to testify. She was present for the pretext call but only told L. to be honest.

Regarding C., L.'s mother explained that in March 2017, she looked at appellant's cell phone and saw text messages with C. She met with C.'s parents and shared what she read in the text messages. She has not spoken with C. since the meeting. Appellant filed for divorce a few months later.

## C.     *Expert testimony.*

Appellant retained Dr. A. Azizian, a licensed psychologist and professor of criminology. His professional experience includes evaluating, assessing, and treating sexual offenders.

Dr. Azizian interviewed appellant on numerous occasions and proctored various psychological tests. The testing included the STATIC-99R and STABLE-2007, which measure risk of recidivism based on historical and sociological factors; the LOOK test, which measures levels of sexual interest and arousal in response to various images; the Hypersexual Behavior Inventory, which assesses problematic sexual behaviors; the Level of Service assessment, which measures self-control problems and general criminality; and the Minnesota Multiphasic Personality Inventory, which assesses psychological conditions and personality features.

Based on this testing, Dr. Azizian opined that appellant did not meet the diagnostic criteria for any paraphilic disorder and showed no indication of having a sexual interest in prepubescent children. His examination of appellant revealed no "risk factors" commonly associated with sexual offenders.

**D.**     *Appellant's testimony.*

Appellant testified he married L.'s mother in 2008.  He worked as a welder for several years, then opened a batting cages business and a tanning salon.  He emphasized that he does not like children and did not spend much time taking care of L. and her brother.  He was very strict with L., and she was frightened of him.  He claimed that L. was a habitual liar, and that she regularly stole money from him.

Appellant denied ever touching L. inappropriately.  He was never alone on the couch with L. and never touched her in the laundry room.  He testified that he did not keep condoms in his dresser, and that the dresser was not visible from the bedroom doorway if the door was partially open.  With respect to the pretext call, appellant stated that he apologized to L. for being hard on her as a child but was not admitting to her allegations of molestation.

Regarding C., appellant testified her father was one of his best friends.  He agreed to train C. several days per week in exchange for C. working an equal amount of time at the batting cages so that her parents did not have to pay him.  Someone else was always present during their training sessions.

Appellant denied having an inappropriate relationship with C.  On one occasion, C. kissed him on the cheek and told him she wanted to say " 'thank you' " for helping her make the team.  A couple of weeks later, C. again kissed him on the cheek, and appellant became upset, telling her she could get him in trouble if L.'s mother saw it.

Appellant testified that L.'s mother disapproved of appellant training C. and complained about her P.E. shorts.  Appellant admitted he sent text messages to C., but only regarding drills for softball.  He claimed that L.'s mother took the SIM card from his phone and used it to send additional text messages to C. that appeared to come from him, to set up a confrontation with her parents. Addressing the social media message to C., appellant stated that her profile randomly "popped up," and he apologized because he felt

10.

bad for suddenly breaking off contact with everyone in the aftermath of L.'s mother's allegations.

## DISCUSSION

### I. The Trial Court's Denial of Appellant's Severance Motion Was Not an Abuse of Discretion.

Appellant contends the trial court erred in denying his motion to sever the charges pertaining to L. from the charges pertaining to C. He asserts the evidence was not cross-admissible, the charges were uniquely inflammatory, and that joinder unfairly bolstered the prosecution's case. He also alleges that denial of severance violated his right to due process.

#### A. *Background.*

Prior to trial, appellant moved to sever the charges relating to each victim. He contended the evidence was not cross-admissible, that joinder of charges involving two distinct child victims would inflame the jury against him, and that the prosecution was attempting to unfairly bolster two factually weak cases. He further argued that a joint trial on both sets of allegations would violate due process, asserting that the jury would be unable to evaluate the claims of the two victims independently.

The trial court denied the motion. It reasoned that evidence of the offenses would be cross-admissible in separate trials pursuant to Evidence Code section 1108, observing that both sets of charges involved the same class of offense—sexual offenses against minors. The court explained that such evidence would not be subject to exclusion under Evidence Code section 352, because its admission would not necessitate the undue consumption of time, and no one offense was more likely than another to inflame the jury. The court also rejected appellant's bootstrapping claim, concluding from its review of the preliminary hearing transcript that neither set of allegations was "particularly weak," as both victims provided clear, specific accounts of sexual abuse.

11.

Appellant renewed his request to sever the offenses in his motions in limine.  The trial court again denied the motion for the reasons previously stated.

Appellant also raised the denial of the severance motion as a basis for his motion for a new trial.  (See § 1181, subd. 5.)  In denying the motion, the trial court reiterated the underlying allegations would still have been cross-admissible under Evidence Code section 1108.  The court further explained that in hypothetical separate trials, it would not have excluded evidence of the uncharged offenses under Evidence Code section 352, given the strong probative value of evidence that appellant sexually assaulted another minor female who came forward independently.  Additionally, the court found the trial testimony of both L. and C. to be "very credible" and rejected appellant's claim that he was prejudiced by the joinder of two comparatively weak cases.

**B.** **_Applicable law and standard of review._**

Section 954 provides that " '[a]n accusatory pleading may charge … two or more different offenses of the same class of crimes or offenses.' " " 'Offenses of the same class are offenses which possess common characteristics or attributes.' " (*People v. Landry* (2016) 2 Cal.5th 52, 76.)  Sex offenses " 'belong to the same class of crimes.' " (*People v. Nguyen* (2010) 184 Cal.App.4th 1096, 1112.)

Even where joinder is proper under section 954, the trial court retains discretion to order separate trials "in the interests of justice and for good cause shown."  (§ 954; see *People v. Sapp* (2003) 31 Cal.4th 240, 257–258.)  "We review for abuse of discretion a trial court's decision not to try the offenses separately, that is, not to sever charges under this provision." (*Sapp*, at p. 258.)  Because the law favors joinder to promote judicial efficiency, a defendant challenging the denial of a discretionary severance motion must make a " ' "clear showing of prejudice" ' " and establish the court's ruling was patently unreasonable.  (*People v. Merriman* (2014) 60 Cal.4th 1, 37 (*Merriman*); see *People v. Anderson* (2018) 5 Cal.5th 372, 388; *Alcala v. Superior Court* (2008) 43 Cal.4th 1205, 1220.)  " ' "[A] party seeking severance must make a *stronger* showing of potential

12.

prejudice than would be necessary to exclude other-crimes evidence in a severed trial" …'[Citations.]" (*People v. Westerfield* (2019) 6 Cal.5th 632, 689.)

In assessing whether the denial of severance constituted an abuse of discretion, we consider: "(1) whether the evidence relating to the various charges would be cross-admissible in separate trials, (2) whether some of the charges are unusually likely to inflame the jury against the defendant, [and] (3) whether a weak case has been joined with a strong case or with another weak case." (*People v. Elliott* (2012) 53 Cal.4th 535, 551; *People v. Anderson*, *supra*, 5 Cal.5th at pp. 388–389.) "We then balance the potential for prejudice to the defendant from a joint trial against the countervailing benefits to the state." (*People v. Soper* (2009) 45 Cal.4th 759, 775, fn. omitted (*Soper*).)

## C.   *An abuse of discretion did not occur.*

Appellant does not dispute that the offenses were of the "same class of crimes" or that the statutory requirements for joinder were satisfied. (§ 954.) Instead, he contends he was prejudiced by joinder, and that denial of his severance motion was an abuse of discretion.

We begin with cross-admissibility, the "crucial factor affecting prejudice." (*People v. Stitely* (2005) 35 Cal.4th 514, 531.) "If the evidence underlying the joined charges would have been cross-admissible at hypothetical separate trials, 'that factor alone is normally sufficient to dispel any suggestion of prejudice and to justify a trial court's refusal to sever properly joined charges.' " (*Merriman*, *supra*, 60 Cal.4th at p. 38.)

In a criminal action charging a sexual offense, Evidence Code section 1108, subdivision (a), permits admission of evidence of other uncharged sexual offenses to establish the defendant's propensity to commit such crimes, subject to exclusion under

13.

Evidence Code section 352.[2][3]  (*People v. Reliford* (2003) 29 Cal.4th 1007, 1012–1013; *People v. Falsetta* (1999) 21 Cal.4th 903, 917–918.)  Likewise, Evidence Code section 1108 permits the jury to draw a propensity inference from other *charged* sexual offenses.  (*People v. Villatoro* (2012) 54 Cal.4th 1152, 1164–1165; see CALCRIM No. 1191B (Evidence of Charged Sex Offense).)

Here, as the trial court correctly observed, all of appellant's charges involved sex offenses against minors, rendering the evidence cross-admissible in hypothetical separate trials pursuant to Evidence Code section 1108.  Moreover, as detailed above, the court undertook a "careful and specialized inquiry" under Evidence Code section 352 and concluded exclusion would not be warranted.  (*Merriman*, *supra*, 60 Cal.4th at p. 41.)  Based on our review of the record, we agree with the court that each set of offenses constituted highly probative evidence of appellant's propensity to commit sexual offenses against minors, and its admission would not have been outweighed by the danger of undue prejudice.  Both victims were well under the age of 18, appellant abused each victim while she was entrusted to his care, and each independently disclosed the abuse.[4]  Based on the cross-admissibility of the offenses alone, appellant fails to demonstrate he was prejudiced by the denial of the severance motion.

---

[2]     Evidence Code section 1108, subdivision (a) states:  "In a criminal action in which the defendant is accused of a sexual offense, evidence of the defendant's commission of another sexual offense or offenses is not made inadmissible by Section 1101, if the evidence is not inadmissible pursuant to Section 352."

[3]     Evidence Code section 352 states: "The court in its discretion may exclude evidence if its probative value is substantially outweighed by the probability that its admission will (a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury."

[4]     Appellant argues that L. and C. were not "identical types of alleged victims" because L. was "pre-pubescent" at the time of the abuse, and C. was "post-pubescent." However, appellant identifies no authority or evidence establishing that such an age discrepancy meaningfully diminishes the probative value of the other-crimes evidence to show propensity.

Next, we are unpersuaded that any of the charges were "unusually likely to inflame the jury against" appellant. (*People v. Elliott*, *supra*, 53 Cal.4th at p. 551.) We agree that "sex crimes can be quite inflammatory, especially when they involve young victims." (*People v. Simon* (2016) 1 Cal.5th 98, 124.) However, both sets of charges against appellant involved the repeated sexual abuse of minors. Although appellant emphasizes that L. was several years younger than C. at the time of the abuse, his conduct toward C. was also of a nature likely to be shocking and repulsive to jurors. Consequently, no single charge, or set of charges, was uniquely inflammatory, and severance was not warranted on this basis.

Lastly, appellant fails to establish either set of charges was a weak case that needed joinder to bolster the likelihood of conviction. (*People v. Simon*, *supra*, 1 Cal.5th at p. 127.) Both victims provided clear, specific, and detailed accounts of multiple instances of sexual abuse, reported independently, and exhibited no apparent motive to fabricate. Thus, the trial court's rejection of appellant's bootstrapping claim and its determination that the victims' allegations and testimony were credible were amply supported by the record.

To conclude, appellant fails to meet the high burden of establishing that the trial court's denial of his discretionary severance motion was clearly prejudicial and patently unreasonable. (See *Merriman*, *supra*, 60 Cal.4th at p. 37.) Accordingly, our review for an abuse of discretion reveals the court did not err, and we reject this claim.

**D.** ***Denial of the severance motion did not impair appellant's due process right to a fair trial.***

Appellant further contends that the denial of his severance motion resulted in a fundamentally unfair trial. "[E]ven if a trial court's ruling on a motion to sever is correct at the time it was made, a reviewing court still must determine whether, in the end, the joinder of counts or defendants for trial resulted in gross unfairness depriving the

15.

defendant of due process of law." (*People v. Rogers* (2006) 39 Cal.4th 826, 851; see *People v. Mendoza* (2000) 24 Cal.4th 130, 162.)

Appellant argues that joinder so influenced and inflamed the jury that it was unable to assess each charge separately. This claim is not supported by the record. Each charge was alleged to have been committed on a specific victim, within a certain window of time, and in a specific manner.[5] L. and C. both described separate and distinguishable acts of sexual abuse that formed the basis of each conviction. "Prejudice does not arise from joinder when the evidence of each crime is 'simple and distinct, even in the absence of cross-admissibility.' " (*People v. Grant* (2003) 113 Cal.App.4th 579, 593; see *Soper*, *supra*, 45 Cal.4th at p. 784.) Furthermore, the jury was instructed on the elements of each offense, the applicable burden of proof, unanimity, and not to let bias or prejudice influence their verdict. These instructions "mitigated the risk of any prejudicial spillover" (*Soper,* at p. 784), and "[a]bsent some showing to the contrary, we presume the jury followed the court's instructions." (*Merriman*, *supra*, 60 Cal.4th at pp. 48–49.)

The jury's independent assessment of the counts is reflected in its not guilty verdict on count 4, attempted forcible lewd act upon a child (§§ 664, subd. (a), 288, subd. (b)(1)), which was based on L.'s testimony regarding the event in which appellant appeared to put on a condom in his bedroom. This acquittal as to one of the counts clearly shows the jury was capable of differentiating between appellant's acts and "compartmentalizing the evidence" applicable to each count. (*People v. Simon*, *supra*, 1 Cal.5th at p. 131; see *Soper*, *supra*, 45 Cal.4th at p. 784)

Finally, insofar as appellant argues that the denial of severance resulted in an unfair trial because the jury was permitted to draw a propensity inference from the presence of multiple victims, the Supreme Court has expressly held that Evidence Code

---

[5] For example, count 1, a violation of section 288, subdivision (a), was alleged to have been committed on L. between October 1, 2011, and October 31, 2013, and was described as "first time touching victim's vagina on the couch."

16.

section 1108 does not offend due process. (*People v. Falsetta*, *supra*, 21 Cal.4th at p. 917.) And, as noted above, even if the trial court had granted severance, evidence of both sets of charges would still have been admissible in separate trials to establish propensity. We therefore conclude the denial of appellant's severance motion did not deprive him of due process, and this claim is without merit.

## II. Substantial Evidence Supported Counts 3 and 5.

Appellant claims the evidence was insufficient to sustain his convictions on counts 3 and 5 for forcible lewd acts on a child under the age of 14 (§ 288, subd. (b)(1)). He argues that in both instances, there was no evidence he used force to commit the lewd acts. We conclude substantial evidence supported a finding that appellant used force or duress to commit the lewd acts.

### A. *Background.*

Count 3 is based on appellant holding L.'s hand on his penis while they were on the couch. Count 5 pertains to the incident in which appellant brought L. into his bedroom, positioned her between his legs, lifted her shirt and training bra, and put his mouth on her breasts.

After the People rested, appellant moved for judgment of acquittal on all counts pursuant to section 1118.1. The trial court denied the motion. With respect to count 3, the court reasoned L.'s testimony that appellant placed her hand on his penis was sufficient to establish force. As to count 5, the court found the act of removing her shirt and bra was sufficient to establish force.

During closing argument, the prosecutor asserted appellant used force in committing counts 3 and 5 for the same reasons articulated by the trial court. He further argued that the evidence established duress, citing the age and size disparity between L. and appellant, appellant's threats, and his admission that L. was terrified of him.

The jury was instructed in CALCRIM No. 1111 that appellant is guilty of committing a forcible lewd act upon a child if the defendant "used force, violence,

17.

duress, menace, or fear of immediate and unlawful bodily injury" to commit the lewd act. The jury was not required to unanimously agree on the particular means appellant used to commit the lewd acts, and the verdict forms did not call for the jury to specify a theory. (See *People v. Russo* (2001) 25 Cal.4th 1124, 1132 [jurors need not unanimously agree on the particular theory of guilt.]

In his motion for a new trial, appellant renewed his contention that the evidence was insufficient to establish force as to counts 3 and 5. (See § 1181, subd. 6 [new trial may be granted where verdict is "contrary to law or evidence"].) The trial court again rejected the claim. On count 3, it noted that both *People v. Babcock* and *People v. Pitmon* held that a defendant's act of placing the victim's hand on his genitals was sufficient to establish the force element. (*People v. Babcock* (1993) 14 Cal.App.4th 383, 388; *People v. Pitmon* (1985) 170 Cal.App.3d 38, 48 (*Pitmon*), disapproved on another ground in *People v. Soto* (2011) 51 Cal.4th 229, 248, fn. 12 (*Soto*).) On count 5, the court reasoned that the force necessary to commit a lewd act does not require the removal of a child's clothing, and thus, the act of lifting L.'s shirt and bra was substantially different from the force necessary to commit the lewd act.

### B.      *Section 288, subdivision (b)(1) – force and duress.*

Section 288, subdivision (b)(1) prohibits lewd acts "by use of force, violence, duress, menace, or fear of immediate and unlawful bodily injury on the victim or another person." In this context, "force" means the use of physical force " 'substantially different from or substantially greater than that necessary to accomplish the lewd act itself.' " (*Soto*, *supra*, 51 Cal.4th at p. 242; see CALCRIM No. 1111.) "[T]he force requirement will be deemed satisfied when the defendant uses any force that is 'different from and in excess of the type of force which is used in accomplishing similar lewd acts with a victim's consent.' " (*People v. Alvarez* (2009) 178 Cal.App.4th 999, 1005.) "[T]his includes acts of grabbing, holding and restraining that occur in conjunction with the lewd acts themselves." (*Ibid.*)

Duress, on the other hand, means " 'a direct or implied threat of force, violence, danger, *hardship* or retribution sufficient to coerce a reasonable person of ordinary susceptibilities to (1) perform an act which otherwise would not have been performed or, (2) acquiesce in an act to which one otherwise would not have submitted.' " (*People v. Leal* (2004) 33 Cal.4th 999, 1004; see CALCRIM No. 1111.)  "In determining whether a sexual offense was accomplished by duress, the trier of fact must consider the totality of the circumstances." (*People v. Martinez* (2024) 105 Cal.App.5th 178, 189.)  Relevant considerations include "the victim's age, her relationship to the perpetrator, threats to harm the victim, physically controlling the victim when the victim attempts to resist, warnings to the victim that revealing the molestation would result in jeopardizing the family, and the relative physical vulnerability of the child." (*People v. Thomas* (2017) 15 Cal.App.5th 1063, 1072; see *Pitmon*, *supra*, 170 Cal.App.3d at p. 51 [examining duress "from the perspective of a normal, average eight-year-old"].)

### C.    *Standard of review.*

Appellant bases his challenges on the trial court's denial of his section 1118.1 motion for a judgment of acquittal.  Denial of the motion is subject to substantial evidence review.[6][7]  (*People v. Houston* (2012) 54 Cal.4th 1186, 1215.)  Under this

---

[6]    In addition to asserting the evidence was insufficient to sustain the convictions, appellant alternatively requests that this court order a new trial.  To the extent he seeks to challenge the trial court's denial of his motion for a new trial for insufficient evidence (§ 1181, case 6), we note that, strictly speaking, a different standard of review is applicable – whether the court " ' "manifest[ly] and unmistakab[ly]" ' " abused its discretion in determining there was " 'sufficient credible evidence to support the verdict.' " (*People v. Davis* (1995) 10 Cal.4th 463, 524.)  Because appellant's claim of error turns on whether the evidence was insufficient as a matter of law to support the convictions on counts 3 and 5, reversal is warranted only if those convictions are unsupported by substantial evidence.  We therefore need not distinguish between the standards of review in conducting our analysis.

[7]    Appellant also asserts that insufficient evidence was presented at the preliminary hearing to hold him to answer on counts 3 and 5, and that the trial court erred in denying his section 995 motion to set aside those counts.  We need not separately address this

standard, "we review the entire record in the light most favorable to the prosecution to determine whether it contains [substantial] evidence that is reasonable, credible and of solid value, from which a rational trier of fact could find that the elements of the crime were established beyond a reasonable doubt." (*People v. Tripp* (2007) 151 Cal.App.4th 951, 955.) We "presume in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence." (*People v. Redmond* (1969) 71 Cal.2d 745, 755.) "We need not be convinced of the defendant's guilt beyond a reasonable doubt; we merely ask whether ' "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." ' " (*Tripp,* at p. 955.)

"[C]onviction of a sex crime may be sustained upon the uncorroborated testimony of the [victim]." (*People v. Poggi* (1988) 45 Cal.3d 306, 326.) Moreover, "[i]n deciding the sufficiency of the evidence, a reviewing court resolves neither credibility issues nor evidentiary conflicts. [Citation.] Resolution of conflicts and inconsistencies in the testimony is the exclusive province of the trier of fact." (*People v. Young* (2005) 34 Cal.4th 1149, 1181.)

### D.    *The verdicts were supported by substantial evidence.*

The crime of forcible lewd act upon a child may be committed by several different means: "force, violence, duress, menace, or fear of immediate and unlawful bodily injury." (§ 288, subd. (b)(1).) Where, as here, the record does not reveal which theory the jury relied upon in reaching its verdicts, reversal is required only if no applicable theory of guilt is supported by substantial evidence. (*People v. Marks* (2003) 31 Cal.4th 197, 233; *People v. Llamas* (1997) 51 Cal.App.4th 1729, 1740.) We conclude the evidence was sufficient to sustain the verdicts under two theories: force and duress.

_____

claim because, as we explain below, the evidence at trial was sufficient to sustain the jury's verdicts. (See *People v. Crittenden* (1994) 9 Cal.4th 83, 136–137 [where trial evidence supports the jury's findings, challenge to the magistrate's probable cause determination is moot].)

Regarding force, as to count 3, L. testified appellant grabbed her hand, placed it on his erect penis, and guided her hand to rub it. As the trial court observed, several courts of appeal have held that substantially similar conduct satisfied the force requirement of section 288, subdivision (b)(1). (*Pitmon*, *supra*, 170 Cal.App.3d at p. 44 [the defendant placed minor victim's hand on his genitals and rubbed himself with the victim's hand]; *People v. Babcock*, *supra*, 14 Cal.App.4th at p. 385 [the defendant took minor victim's hand and made her touch his crotch]; *People v. Neel* (1993) 19 Cal.App.4th 1784, 1790 [the defendant grabbed daughter's wrist, placed her hand on his penis, and moved it up and down], disapproved on another ground in *Soto*, *supra*, 51 Cal.4th at p. 248, fn. 12.) We agree that appellant's "manipulation of [L.'s] hand as a tool to rub his genitals was a use of physical force beyond that necessary to accomplish the lewd act." (*Pitmon*, *supra*, 170 Cal.App.3d at p. 48.)

Likewise, on count 5, L. testified appellant "brought" her into his room and "put" her between his legs, suggesting he physically moved her to effectuate the lewd act, and placed her in a position where her movement was restricted. Further, while not specifically articulated by L., it may be reasonably inferred appellant's act of lifting her shirt and training bra necessarily involved grabbing hold of her clothing. Grabbing, holding, or restraining a minor victim to effectuate a lewd act is "sufficient to support a finding that [said] act was committed by means of force." (*People v. Morales* (2018) 29 Cal.App.5th 471, 480.) A reasonable jury could therefore have concluded that the combination of appellant positioning L. between his legs and manipulating her clothing with enough force to expose her breasts was " 'different from and in excess of the type of force' " necessary to accomplish the lewd act. (*People v. Alvarez*, *supra*, 178 Cal.App.4th at p. 1005.)

The record also strongly supports findings that appellant committed both offenses by duress. Appellant was L.'s stepfather, and he occupied a position of dominance and authority in the household at the time of the abuse. He was a strict disciplinarian, and she

21.

was frightened of him. L. was nine years old when the abuse began and did not initially understand the inappropriate and wrongful nature of appellant's conduct. As the abuse progressed over several years, appellant instructed L. not to tell her friends, ignored her request to stop the abuse, and later threatened to harm her family if she disclosed.

Against this backdrop, the jury had ample basis to conclude that L. acquiesced to the abuse due to appellant's coercion. In fact, while describing the events underlying count 3, L. expressly stated she did not resist because she was "so used to [the abuse]" that she "froze and let him do whatever."

" ' "Where the defendant is a family member and the victim is young, . . . the position of dominance and authority of the defendant and his continuous exploitation of the victim" [are] relevant to the existence of duress.' " (*People v. Espinoza* (2002) 95 Cal.App.4th 1287, 1320.) Several appellate courts have observed that, under these circumstances, "duress will be present in all but the rarest cases." (*People v. Thomas*, *supra*, 15 Cal.App.5th at pp. 1072–1073; see *People v. Veale* (2008) 160 Cal.App.4th 40, 49; *People v. Cochran* (2002) 103 Cal.App.4th 8, 16, fn. 6., disapproved on another ground in *Soto*, *supra*, 51 Cal.4th at p. 248, fn. 12.) This is not one of those rare cases. The evidence clearly showed that appellant used his position of authority within the family, together with threats and physical control, to isolate and coerce his young stepdaughter into repeated acts of sexual abuse.

In sum, our review of the record reveals substantial evidence supported the jury's verdicts on counts 3 and 5 under both theories of force and duress, and this claim fails.

## III.    The Trial Court's Evidentiary Rulings Were Not an Abuse of Discretion.

Appellant challenges several of the trial court's evidentiary rulings. We conclude that no abuse of discretion occurred. We also reject appellant's assertions that the rulings deprived him of his right to due process or that the court demonstrated bias against him.

A.    *Exclusion of prior accusations of sexual abuse.*

The People moved in limine to exclude evidence of a report of possible sexual abuse involving L. when she was three years old.  According to the police report, L.'s mother and biological father were involved in a custody dispute.  L.'s mother expressed concern that L.'s biological father was molesting her because L. was rubbing her pelvic region on the floor and stuffed animals and stated that her biological father touched her "[c]hacha" during a bath.  L.'s mother had L. examined by a pediatrician, who observed slight irritation to her vaginal region but no signs of sexual misconduct.  When interviewed, three-year-old L. stated the only time her biological father touched her "[c]hacha" was while he was washing her in the bath.  She also stated she had seen his penis, but only as he exited the shower while she was going " 'potty.' "  The reporting officer concluded there was no evidence of a crime.

The trial court did not expressly rule on the motion but observed that the report would generally be inadmissible except for purposes of impeachment, and it could not be used to impeach L. because she was three years old at the time of the report and did not claim she had been molested.

The People also moved in limine to admit the recording of the pretext call, but with the following exchange redacted:

> "[Appellant]:  'Cause I remember we used to have issues about you saying your dad was doing that to you.
>
> "[L.]:  That was a report when I was five.
>
> "[Appellant]:  Yeah.  And then there was another one where it was saying that one of her other boyfriends had did [*sic*] that to you, but I don't know how true that was.
>
> "[L.]:  There was never a report about that.  It was a report of when I was at my father's house, when I was in his possession, that someone was molesting me.  But when I got older, I'm saying that you did it to me and…
>
> "[Appellant]:  [L.]"

23.

Appellant objected to the redactions and argued that the entire call should be admitted pursuant to the rule of completeness (Evid. Code, § 356), and because L.'s statements concerning other reports of sexual abuse were relevant to her credibility. The trial court disagreed and tentatively granted the People's request, reasoning that the redacted portion did not provide additional context and that prior allegations are relevant only if shown to be false. Although the court explained it might reconsider the redaction upon a credible showing that L. previously made a false accusation, it noted that any such evidence would remain subject to Evidence Code section 352. In that regard, the court expressed concern that admitting such impeachment evidence would result in "a trial within a trial," and that its probative value would be substantially outweighed by the undue consumption of time.

During trial, defense counsel attempted to question L. regarding prior accusations made on her behalf involving men other than appellant. Outside the presence of the jury, the trial court explained that accusations made by L.'s mother were not relevant to L.'s credibility because she "can't control what her mom says or does," and the falsity of the accusations had not been established. The court further rejected appellant's argument that the prior report demonstrated L.'s mother manipulated L. into lying, reasoning there was no evidence to support the claim and that any such inference would be speculative. In response to appellant's request for a hearing under Evidence Code section 402 to evaluate the allegations, the court stated that in the absence of a compelling offer of proof, it was unwilling to hold "a trial within a trial."

The next day, appellant filed a motion asking the trial court to reconsider its ruling. In denying the motion, the court observed that the redacted excerpt of the pretext call appeared to reference two purported prior allegations: (1) the 2007 report made by L.'s mother; and (2) that unspecified boyfriends of L.'s mother molested L. while L. was in the custody of her biological father. As to the 2007 report, the court again explained that even if the allegation by L.'s mother was shown to be false, her actions were not

24.

relevant to L.'s credibility.  As to the allegations involving L,'s mother's boyfriends, the court concluded appellant had made no showing the allegations were false.  When asked if he knew the identity of the other boyfriends referenced in the pretext call, defense counsel conceded he "think[s]" he knows who they are, but "they wouldn't talk to us."

Appellant again challenged the redaction of the pretext call in his motion for a new trial, and the trial court rejected the claim for the same reasons previously articulated.  The court additionally concluded that litigating the veracity of the prior accusations would have entailed an undue consumption of time and risked distracting the jury from its core task of deciding the charged offenses.  (See Evid. Code, § 352.)  Appellant further contended that the redaction barred him from presenting a defense that L. was abused by someone else and mistakenly identified appellant as the perpetrator.  The court disagreed, finding that L. clearly and consistently identified appellant as her abuser and that nothing in the proffered evidence supported a claim of mistaken identity.

### 1. Applicable law and standard of review.

"Evidence of a prior false report of molestation or rape is relevant to the credibility of the victim."  (*People v. Miranda* (2011) 199 Cal.App.4th 1403, 1424; see *People v. Tidwell* (2008) 163 Cal.App.4th 1447, 1457.)  "The instance of conduct being placed before the jury as bearing on credibility is the making of the false statement, not the sexual conduct which is the content of the statement."  (*People v. Franklin* (1994) 25 Cal.App.4th 328, 335.)  Thus, "[t]he value of the evidence as impeachment depends upon proof that the prior charges were false."  (*People v. Bittaker* (1989) 48 Cal.3d 1046, 1097.

"A trial court's decision to admit or exclude evidence is reviewable for abuse of discretion."  (*People v. Vieira* (2005) 35 Cal.4th 264, 292; see *People v. Ghobrial* (2018) 5 Cal.5th 250, 283.)  Under Evidence Code section 352, a court " 'enjoys broad discretion in assessing whether the probative value of particular evidence is outweighed by concerns of undue prejudice, confusion or consumption of time.' "  (*People v. Lewis*

(2001) 26 Cal.4th 334, 374.)  "This discretion allows the trial court broad power to control the presentation of proposed impeachment evidence ' " 'to prevent criminal trials from degenerating into nitpicking wars of attrition over collateral credibility issues.' " ' " (*People v. Mills* (2010) 48 Cal.4th 158, 195.)  Accordingly, reversal is not required "except on a showing the trial court exercised its discretion in an arbitrary, capricious, or patently absurd manner that resulted in a manifest miscarriage of justice." *(People v. Rodriguez* (1999) 20 Cal.4th 1, 9–10.)

### 2. Exclusion of the prior accusations was not an abuse of discretion.

Appellant fails to demonstrate the purported prior allegations of sexual abuse had any probative value.  The 2007 report regarding L.'s biological father was made by L.'s mother, not L. herself.  L. was three years old when the report was made, and she never claimed her biological father abused her.  Thus, assuming the report was a false accusation of sexual abuse, it had no bearing on L.'s credibility.[8]

The allegations regarding L.'s mother's other boyfriends were similarly unsupported.  Appellant made no offer of proof of how he expected to show the allegations were false.  Defense counsel could not identify the purported "other boyfriends" with certainty, had not obtained statements from them, and there was no indication that the alleged incidents were reported to law enforcement.

Appellant alleges the prior allegations would have shown that L. has been "weaponized" by her mother to make false allegations against him and other men.  This theory is based purely on speculation and was appropriately rejected by the trial court.

---

[8]     We also note that the 2007 report indicates L.'s mother did not make an unequivocal accusation that L.'s biological father had sexually abused L.  Rather, she reported having "observed behavior in [L.] that she viewed as indicative of child molestation" and expressed a "[f]ear[] that her estranged husband sexually molested her children."  The report therefore reflects that L.'s mother conveyed concerns based on her observations, which were later determined to be unfounded, rather than a definitive allegation of sexual abuse that was proven false.

Even assuming the prior allegations were shown to be false, nothing in the record reasonably suggested L.'s mother influenced her to make the allegations.

Appellant's reliance on *Franklin v. Henry* (9th Cir. 1997) 122 F.3d 1270 (*Henry*) is unavailing. There, a five-year-old child reported, in part, that the defendant "licked her 'private.' " (*Id*. at p. 1271.) The trial court prohibited the defendant from testifying that he overheard the child tell her brothers that her mother had " 'licked her private.' " (*Id*. at p. 1272.) The state Court of Appeal held exclusion of the child's statement was erroneous because it was relevant to her credibility, but determined the error was harmless. (*People v. Franklin*, *supra*, 25 Cal.App.4th at pp. 335–337.) On habeas review, however, *Henry* concluded exclusion constituted prejudicial error because the child's statement "bore on the credibility of the only percipient witness against [the defendant]," and would have shown the child was "capable of fantasies about her mother analogous to the charges she made against [the defendant]." (*Henry*, at p. 1273.)

*People v. Franklin* is distinguishable because the prior accusation at issue was made by the child herself, and it was undisputed that the accusation was a product of her imagination. (See *People v. Franklin*, *supra*, 25 Cal.App.4th at p. 335, fn. 4.) Here, the 2007 report was not made by L., and the prior allegations involving the former boyfriends were never shown to be false. Thus, unlike in *Henry*, the prior allegations did not bear on L.'s credibility.

We also reject appellant's assertion that the prior allegations were relevant to a "mistaken eyewitness identification" defense. Appellant was L.'s stepfather, and she consistently and unequivocally identified appellant as her abuser. There was no evidence or offer of proof that L. had been molested by other men, much less under circumstances that would support an inference of misidentification.

27.

Appellant's rule-of-completeness (Evid. Code, § 356) argument is similarly unpersuasive.[9] "The purpose of this section is to prevent the use of selected aspects of a conversation, act, declaration, or writing, so as to create a misleading impression on the subjects addressed." (*People v. Arias* (1996) 13 Cal.4th 92, 156.) However, " ' "The rule is not applied mechanically to permit the whole of a transaction to come in without regard to its competency or relevancy .…" ' " (*People v. Johnson* (2022) 12 Cal.5th 544, 605.) Evidence offered under the rule of completeness is also subject to exclusion under Evidence Code section 352. (*Johnson,* at p. 605.)

The redacted portion of the pretext call was not necessary to place the remainder in context. Appellant's unprompted discussion of L.'s purported prior allegations of sexual abuse, and L.'s responses, were unnecessary to evaluate appellant's reaction to L.'s accusations of the sexual abuse charged in this case.

Ultimately, the admission of prior allegations of sexual abuse, whether offered for impeachment or pursuant to the rule of completeness, lies within the trial court's broad discretion. (*People v. Johnson*, *supra*, 12 Cal.5th at p. 605.) Given the negligible probative value of the prior allegations and the lack of any offer of proof establishing their relevance, the court had ample basis to conclude the allegations were irrelevant and subject to exclusion under Evidence Code section 352. Accordingly, the court's ruling was not "arbitrary, capricious, or patently absurd," and an abuse of discretion did not occur. (*People v. Rodriguez*, *supra*, 20 Cal.4th at p. 9.)

### B. *Refusal to allow appellant to examine L.'s mother as a hostile witness.*

L.'s mother was called as a defense witness, and prior to her testimony, defense counsel announced that he was planning on "calling her as a hostile witness." During her

---

[9] Evidence Code section 356 provides, in relevant part: "Where part of [a] . . . conversation . . . is given in evidence by one party, the whole on the same subject may be inquired into by an adverse party; . . . when a . . . conversation . . . is given in evidence, any other act, declaration, conversation, or writing which is necessary to make it understood may also be given in evidence."

direct examination, defense counsel did not ask leading questions. After her testimony concluded, the trial court revealed that during a sidebar, defense counsel requested to examine L.'s mother pursuant to Evidence Code section 776, subdivision (a), which allows a party to a civil action to "be called and examined as if under cross-examination by any adverse party." (Evid. Code, § 776, subd. (a).) The court explained it denied the request because there is no parallel statute that applies to criminal matters. (See *People v. Spain* (1984) 154 Cal.App.3d 845, 854, fn. 5.) The court also found that L.'s mother was "cooperat[ive] with the direct examiner," and there was no basis to allow leading questions.

Appellant does not rely on Evidence Code section 776 on appeal. Instead, he contends the court should have allowed leading questions in light of L.'s mother's alleged bias and hostility toward him, as purportedly reflected in her testimony.

### 1. Permitting the examination of a witness as "hostile" lies within the trial court's discretion.

Evidence Code section 767, subdivision (a)(1) provides: "(a) Except under special circumstances where the interests of justice otherwise require: [¶] (1) A leading question may not be asked of a witness on direct or redirect examination." "The rule is . . . long established that permitting the use of leading questions on direct examination when [a party] is faced with a hostile witness is a special circumstance." (*People v. Spain*, *supra*, 154 Cal.App.3d at p. 853.) "Because assessment of the circumstances revealing the witness' hostility is uniquely within the realm of the trial court, the use of leading questions on direct examination is committed to the sound discretion of the trial court." (*Ibid*.; see *People v. Williams* (2008) 43 Cal.4th 584, 631.)

### 2. An abuse of discretion did not occur.

The record does not support appellant's claim that L.'s mother was hostile. She directly answered all of defense counsel's questions, and her answers were not evasive or incomplete. While L.'s mother was undoubtedly biased against appellant given their

acrimonious separation and the nature of the charges, nothing about the manner of her testimony prevented defense counsel from conducting a complete and thorough examination. Appellant therefore fails to establish an abuse of discretion occurred, and we reject this claim.

### C. *Limitations on the proposed testimony of L.'s biological father.*

During trial, defense counsel represented he intended to call L.'s biological father as a witness. As an offer of proof, he claimed the father would opine that L.'s mother manipulated her into making sexual abuse allegations against appellant. The trial court determined that defense counsel could not present this opinion to the jury unless a proper foundation was laid outside of the presence of the jury.

At an Evidence Code section 402 hearing, the biological father explained that his relationship with L.'s mother has been caustic since their divorce. He does not know appellant well but interacted with him when his children were dropped off for visits and picked up. He opined that appellant was a good stepfather to his children and is an honest and credible person.

The biological father acknowledged that he was unaware of the details of the charges against appellant and did not know the substance of L.'s testimony. However, he testified he believed L. might not be able to testify truthfully because she has been "coerced and manipulated" by her mother. He could not offer a reason why L.'s mother would manipulate her to make false accusations against appellant and could not provide any specific examples of such manipulation. His opinion that L.'s mother may have influenced her testimony was based on his own dealings with L.'s mother. When pressed for examples, he explained that L. sometimes declined to see him on visitation days, which led him to believe that L.'s mother was responsible. He also described a prior accusation of sexual abuse, apparently in reference to the 2007 report made by L.'s mother. He claimed he had many examples of L.'s mother lying to him, but as to L., he only stated that she sometimes arrived later than she said she would.

30.

The trial court excluded the biological father's opinion that L.'s mother manipulated L.'s testimony, finding it lacked adequate foundation and personal knowledge. The court reasoned that the father's opinion was speculative, as it was based on his belief that L.'s mother had manipulated L. against him in the past and therefore must have manipulated L. against appellant. However, the father did not describe any personal observations that would support the conclusion that L.'s mother manipulated L.'s trial testimony. The court also excluded the biological father's opinion of L.'s character for truthfulness, concluding that cancelling plans and arriving late do not reflect dishonesty.

After issuing its rulings, the trial court asked defense counsel if he wanted to call the biological father to testify about appellant's character or for any other purpose. Defense counsel declined to do so.

### 1. Admission of lay opinion and character evidence is within the discretion of the trial court.

Under Evidence Code section 1103, a defendant may introduce evidence of a victim's character trait, in the form of an opinion or specific instances of conduct, to prove the victim's conduct in conformity with that trait. (Evid. Code, § 1103, subd. (a)(1).) The court may, in its discretion, require a witness to be examined regarding the basis of their opinion before offering it in testimony. (*Id*., § 802.) Such an opinion must be based "on the witness's personal observations or knowledge." (*People v. Bell* (2019) 7 Cal.5th 70, 107; see Evid. Code, § 702.) A court also has discretion to exclude evidence "that produces only speculative inferences." (*People v. Babbitt* (1988) 45 Cal.3d 660, 684.)

The exclusion of lay opinion testimony and character evidence are reviewed for an abuse of discretion. (*People v. Medina* (1990) 51 Cal.3d 870, 887; *People v. Barrett* (2025) 17 Cal.5th 897, 953.)

### 2. Exclusion of the biological father's opinions was not an abuse of discretion.

Appellant claims the trial court should have allowed L.'s biological father to offer his opinion on L.s' credibility and describe past accusations against him by L. and her mother. We disagree. The court gave appellant ample opportunity to establish a foundation for the opinions, but the father could not identify any specific instances in which L. was dishonest or accused anyone of sexual abuse. He only referenced the 2007 report, which, as explained above, was made by L.'s mother rather than L. herself. Moreover, his opinion that L.'s mother had manipulated L.'s testimony against appellant was speculative and unsupported by personal knowledge.

Appellant also asserts that the biological father could have described the past accusations L. made against other men that appellant referenced in the pretext call. But the father did not mention any other accusations of sexual abuse in the Evidence Code section 402 hearing, let alone show the allegations were false.[10]

Finally, in his reply brief, appellant asserts the trial court should have allowed the biological father to offer his opinion that appellant was a good father. The court specifically asked defense counsel whether he wanted to call the father to testify about appellant's character, and defense counsel declined. " '[T]he absence of an adverse ruling precludes any appellate challenge.' " (*People v. Rowland* (1992) 4 Cal.4th 238, 259.)

The record clearly shows that appellant failed to demonstrate that the biological father's opinions about L.'s testimony and character were based on his personal

---

[10] Appellant submitted a declaration from the biological father attached to his sentencing memorandum. As pertinent here, the declaration stated: "[L.'s mother] accused me of allowing [L.] to be molested when she was in my care by other individuals. This was also found to be another untrue lie." It is unclear why this declaration was not offered until sentencing. In any event, it did not demonstrate that the biological father's testimony would have established that L. made prior false accusations of sexual abuse.

observations and knowledge, rather than speculation and conjecture. For this reason, the exclusion of the father's opinion was not an abuse of discretion, and this claim fails.

### D. *Admission of appellant's prior conviction for cross-examination of Dr. Azizian.*

In limine, the People requested permission to impeach appellant with the fact of his 2000 federal conviction for possession of a firearm with an obliterated serial number (18 U.S.C. § 922(k)), should he elect to testify. The trial court excluded the prior conviction for this purpose pursuant to Evidence Code section 352.

While describing the results of the STABLE-2007 assessment on direct examination, Dr. Azizian noted that appellant had a "prior arrest," and that he did not view it as a strong indicator of impulsivity. Dr. Azizian also explained that the Level of Service assessment incorporates a review of the subject's criminal history, including prior interactions with the justice system and whether the subject has previously served time in custody. He opined that appellant's score on the assessment showed a " 'very low risk' " of offending.

During a break in direct examination, the prosecutor argued he should be allowed to ask Dr. Azizian whether he was aware that appellant has been convicted of a felony when he made his assessment. The trial court agreed that Dr. Azizian "opened the door" by testifying he relied on appellant's criminal history and ruled that the prosecutor was entitled to cross-examine him on whether he considered the prior conviction in making his assessment. In response to the court's ruling, defense counsel argued he should be permitted to question Dr. Azizian about the redacted portion of the pretext call because Dr. Azizian had reviewed it. The court denied the request.

When direct examination resumed, defense counsel asked Dr. Azizian to provide details about appellant's prior conviction and explain how it affected his opinion. Dr. Azizian testified that at age 19, appellant received a firearm from a family member and erased its serial number during refurbishment. As a result, appellant was arrested,

33.

jailed for a number of days, and placed on probation. Dr. Azizian explained that he considered the prior conviction as part of the Level of Service assessment, but that in light of appellant's age at the time of the offense and the numerous other relevant factors considered, appellant nevertheless demonstrated a low risk of offending. The prosecutor did not address the prior conviction during cross-examination.

Appellant testified on direct examination that he had suffered a felony conviction and described the underlying facts in greater detail.

### 1. The fact of appellant's prior conviction was within the permissible scope of cross-examination.

An expert witness "may be cross-examined to the same extent as any other witness and, in addition, may be fully cross-examined as to (1) his or her qualifications, (2) the subject to which his or her expert testimony relates, and (3) the matter upon which his or her opinion is based and the reasons for his or her opinion." (Evid. Code, § 721, subd. (a).) " ' " ' "Once an expert offers his opinion, . . . he exposes himself to the kind of inquiry which ordinarily would have no place in the cross-examination of a factual witness. The expert invites investigation into the extent of his knowledge, *the reasons for his opinion including facts and other matters upon which it is based* [citation], and which he took into consideration; and he may be '*subjected to the most rigid cross-examination*' *concerning* his qualifications, and *his opinion and its sources* [citation]." (Italics added.)' " ' " (*People v. Henriquez* (2017) 4 Cal.5th 1, 26; see *People v. Lancaster* (2007) 41 Cal.4th 50, 105.)

Dr. Azizian testified on direct examination that he considered appellant's arguably limited criminal history in forming his opinion that appellant presented a low risk of committing sexual offenses. Under Evidence Code section 721, the prosecutor was entitled to explore Dr. Azizian's knowledge of appellant's criminal history on cross-examination to test his credibility and challenge his opinion. (*People v. Henriquez*, *supra*, 4 Cal.5th at pp. 26–27; see *People v. Rodriguez* (2014) 58 Cal.4th 587, 646–647.)

34.

## 2. The court's ruling did not permit the introduction of inadmissible case-specific hearsay.

Relying on *People v. Sanchez,* appellant argues the fact of his prior conviction was inadmissible case-specific hearsay. (*People v. Sanchez* (2016) 63 Cal.4th 665 (*Sanchez*).) *Sanchez* recognized a distinction between general background information in an expert's field of expertise versus case-specific facts about which the expert has no independent knowledge. (*Id*. at p. 676.) "Case-specific facts are those relating to the particular events and participants alleged to have been involved in the case being tried." (*Ibid*.) Based on this distinction, *Sanchez* explained: "If an expert testifies to case-specific out-of-court statements to explain the bases for his opinion, those statements are necessarily considered by the jury for their truth, thus rendering them hearsay. Like any other hearsay evidence, it must be properly admitted through an applicable hearsay exception." (*Id*. at p. 684, fn. omitted.) Moreover, where a "prosecution expert seeks to relate *testimonial* hearsay, there is a confrontation clause violation unless (1) there is a showing of unavailability and (2) the defendant had a prior opportunity for cross-examination." (*Id*. at p. 686; see generally *Crawford v. Washington* (2004) 541 U.S. 36.) At least one California Court of Appeal has concluded that *Sanchez* extends to case-specific hearsay admitted through cross-examination of expert witnesses. (*People v. Malik* (2017) 16 Cal.App.5th 587, 597–598.)

*Sanchez's* limitations on case-specific hearsay are inapplicable where the evidence is "independently proven by competent evidence or [is] covered by a hearsay exception." (*Sanchez*, *supra*, 63 Cal.4th at p. 665.) Here, the prosecution only sought to admit the fact of appellant's prior conviction, which may be established by documentary evidence admitted under the public records exception to the hearsay rule. (Evid. Code, §§ 452.5, subd. (b)(1), 1280; *People v. Martinez* (2000) 22 Cal.4th 106, 113, 119; *People v. Duran* (2002) 97 Cal.App.4th 1448, 1460–1462; see *People v. Morris* (2008) 166 Cal.App.4th

363, 373 [computerized rap sheets are not testimonial]; *People v. Taulton* (2005) 129 Cal.App.4th 1218, 1225 [§ 969, subd. (b) records are not testimonial].)

While the record is silent as to how the prosecutor intended to prove up the conviction, no proof was required because appellant effectively admitted its existence through Dr. Azizian shortly after the court deemed it admissible. However, we have no reason to doubt that the prosecutor was prepared to do so with competent evidence, particularly given that appellant did not dispute the conviction's existence. Regardless, due to appellant's admission, the manner of proof is not before us, and our review is limited to whether the trial court's ruling necessarily invited the prosecutor to admit inadmissible case-specific hearsay. Because the prosecutor could have proved the prior conviction by offering documentary evidence—such as a certified record of conviction or computerized rap sheet—under an applicable hearsay exception, we conclude it did not.

### 3. The redacted portion of the pretext call was properly excluded on other grounds.

Relatedly, appellant contends the court should have allowed Dr. Azizian to discuss the redacted portion of the pretext call because it was "background information" relevant to his expert testimony and not case-specific hearsay. We need not address the applicability of *Sanchez* because the redacted portion was properly excluded on other grounds. As detailed above, the trial court exercised its discretion to exclude the redacted portion as irrelevant, and under Evidence Code section 352. (See *People v. Veamatahau* (2020) 9 Cal.5th 16, 34 [court has authority to "impose reasonable limits" on expert testimony under Evidence Code section 352].) Appellant did not explain below, and does not explain on appeal, how the redacted portion was relevant to Dr. Azizian's opinion. Accordingly, an abuse of discretion did not occur, and this claim is without merit.

## IV. The Charges Pertaining to C. Were Not Time-barred.

Appellant contends the charges relating to C. were time-barred under section 803, subdivision (f), because the complaint was amended at the preliminary hearing more than

one year after C. reported appellant's abuse to law enforcement. (See § 803, subd. (f)(1).) This provision is inapplicable because the charges were filed well within the applicable statute of limitations. (*Id*., subd. (f)(2)(A).)

Appellant was initially charged in the complaint, as to C., with seven counts of unlawful sexual intercourse with a minor under the age of 16 (§ 261.5, subd. (d)) and four counts of committing a lewd act upon a child aged 14 or 15 (§ 288, subd. (c)(1)). At the preliminary hearing, the magistrate tentatively dismissed the section 261.5, subdivision (d) counts as time-barred under the three-year statute of limitations. (See § 801 [general three-year statute of limitation for most felonies].) However, the court granted the People's request to orally amend the complaint to add corresponding section 288, subdivision (c)(1) charges and held appellant to answer thereon.

Following the filing of the information, appellant contended in a section 995 motion that all charges relating to C., including violations of sections 288, subdivision (c)(1) and 287, subdivisions (b)(1) and (b)(2), were time-barred under section 803, subdivision (f). The trial court denied the motion, concluding section 803 did not apply because the charges were filed within the limitations period prescribed by section 801.1.

Appellant's reliance on section 803, subdivision (f) is misplaced. Subdivision (f) is a tolling provision that may extend the applicable statute of limitations for some sexual offenses, including crimes described in sections 287 and 288. (§ 803, subd. (f)(1); see *People v. Hernandez* (2011) 200 Cal.App.4th 953, 969–970.) Specifically, it allows a criminal complaint to be filed within one year of a victim reporting to law enforcement that he or she was the victim of a specified offense while under the age of 18. (§ 803, subd. (f)(1).) Importantly, this provision only applies if "[t]he limitation period specified in Section 800, 801, or 801.1, whichever is later, has expired." (*Id*., subd. (f)(2)(A).)

We agree with the trial court that the charges were filed within the applicable limitations period. Section 801.1, subdivision (a)(1), provides that prosecution of any

37.

felony offense described in section 287 or 288 "may be commenced any time prior to the victim's 40th birthday." Subdivision (a)(2) of this section specifies that the above provision only applies "to crimes that were committed on or after January 1, 2015, or for which the statute of limitations that was in effect prior to January 1, 2015, has not run as of January 1, 2015." The charges at issue were alleged to have occurred between 2013 and 2017. Even if the offenses occurred prior to January 1, 2015, the then applicable 10-year statute of limitations period would not have expired by that date. (See § 801.1, former subd. (b) (Stats. 2007, ch. 579, § 40) [10-year statute of limitations for offenses listed in § 290, subd. (c)].)

In short, because the charges pertaining to C. were timely under section 801.1, section 803, subdivision (f), is inapplicable, and appellant's claim lacks merit.

## V. The Trial Court Properly Allowed Amendment of the Information to Conform to Proof. The Amendments Did Not Violate Due Process.

Appellant asserts the trial court erred in allowing the People to amend the information after resting their case-in-chief. He argues the timing of the amendments deprived him of his due process rights to fair notice and the ability to prepare a defense.

### A. *Background.*

After the People rested, the prosecutor moved to file an amended information to conform to proof at trial. Appellant objected on the ground that the People had rested. The trial court overruled the objection, finding the amendments were supported by the evidence taken at the preliminary hearing.

The amended information contained three modifications. On count 11, the description of the offense (§ 288, subd. (c)(1)) was changed from "first time having intercourse at [appellant's] house" to "last time [appellant] had intercourse with the victim." On count 12, the charged offense was changed from lewd act upon a child aged 14 or 15 (*ibid.*) to oral copulation of a person under age 18 (§ 287, subd. (b)(1)). The description of the offense was changed from "last time having intercourse at [appellant's]

house" to "an act of oral copulation with [C.], … to wit, at the defendant's home," and the alleged timeframe in which the offense occurred was extended by one year.[11]  The amended information also added count 17, sexual penetration with a person under age 18 (§ 289, subd. (h)), described as "an act of digital penetration with [C.], … to wit, at the tanning business."

In his motion for a new trial, appellant argued the filing of the amended information after the People rested violated his right to due process.  The trial court disagreed, reasoning there were no substantive changes to the amended charges, and the added charge (count 17) was established by the evidence at the preliminary hearing.

**B.      *Applicable law and standard of review.***

"Due process of law requires that an accused be advised of the charges against him so that he has a reasonable opportunity to prepare and present his defense and not be taken by surprise by evidence offered at his trial." (*People v. Jones* (1990) 51 Cal.3d 294, 317.)  However, it is well settled that "a trial court may permit amendment of the information ' "at any stage of the proceeding, up to and including the close of trial," ' if the defendant's substantial rights are not violated (unless the new offense is not supported by evidence at the preliminary hearing)." (*People v. Fugit* (2023) 88 Cal.App.5th 981, 993.)  Section 1009 expressly authorizes the court to "permit an amendment of an . . . information . . . for any defect or insufficiency, at any stage of the proceedings," so long as the amended information does not "charge an offense not shown by the evidence taken at the preliminary examination." (§ 1009.)  Thus, "[i]f there is no prejudice, an amendment may be granted 'up to and including the close of the trial.' " (*People v. Goolsby* (2015) 62 Cal.4th 360, 368.)  The decision to permit amendment of the information lies " 'within the sound discretion of the trial court and its ruling will not

---

[11]      The amendments to counts 11 and 12 appear to have been based on C.'s testimony that she was 16 years old when she had sexual contact with appellant at his residence, which placed her outside of the age range covered by section 288, subdivision (c)(1).

39.

be disturbed on appeal absent a clear abuse of discretion.' " (*People v. Hamernik* (2016) 1 Cal.App.5th 412, 424.)

> **C.** ***The trial court did not abuse its discretion in permitting the People to file an amended information. The amendments did not impair appellant's due process rights.***

Appellant does not dispute that the amendments were shown by the evidence at the preliminary hearing. He advances the same argument he raised in his motion for a new trial—that the filing of the amended information after the People rested violated his due process rights to fair notice and the opportunity to prepare a defense.

We are not persuaded. The preliminary hearing "represents 'the touchstone of due process notice to a defendant.' " (*People v. Jones*, *supra*, 51 Cal.3d at p. 312.) " '[A]t a minimum, a defendant must be prepared to defend against all offenses of the kind alleged in the information as are shown by evidence at the preliminary hearing to have occurred within the timeframe pleaded in the information.' " (*Id*. at p. 317.)

Here, the preliminary hearing afforded appellant ample notice of the nature and factual basis of the amended charges. At that hearing, a detective detailed C.'s statement to law enforcement, which included descriptions of oral copulation at appellant's residence, digital penetration at appellant's tanning business, and numerous acts of sexual intercourse. Appellant does not articulate how the timing of the amendments impaired his ability to present a defense. In light of the clear notice afforded by the preliminary hearing testimony, we discern no prejudice, and therefore the trial court did not err in permitting the prosecution to amend the information.[12]

---

[12] Appellant also makes the conclusory assertion that the amended information "was not verified as required by" sections 740 and 1109. Appellant raised the same claim in his motion for a new trial but withdrew and conceded the claim before it was adjudicated. Accordingly, the claim is not cognizable on appeal. (See *People v. Rowland*, *supra*, 4 Cal.4th at p. 259 [" 'absence of adverse ruling precludes appellate challenge' "].)

**VI.** **The Trial Court Did Not Abuse Its Discretion at Sentencing. Appellant's Sentence Is Not Cruel and Unusual Punishment.**

Appellant claims the trial court abused its discretion by failing to consider an applicable mitigating factor. He also alleges his sentence constitutes cruel and unusual punishment.

**A.** *Background.*

The People alleged as to all counts the aggravating factors that "[t]he victim was particularly vulnerable" (Cal. Rules of Court, rule 4.421(a)(3)) and "[t]he defendant took advantage of a position of trust or confidence" (*id*., rule 4.421(a)(11)). Appellant waived his right to a jury trial on the truth of the aggravating factors. (See § 1170, subd. (b)(2).)

/After the jury returned its verdict, the trial court made findings on the aggravating factors based on the evidence at trial. As to L., the court found she was particularly vulnerable given her young age, appellant's position of authority and use of threats, and the fact that the offenses occurred in the family home where L. had nowhere to retreat for protection. The court further found appellant abused a position of trust with L., as she was his stepdaughter, and he was entrusted with her care. As to C., the court found she was particularly vulnerable because she was susceptible to appellant's advances and "grooming techniques" due to her young age and immaturity. The court also found appellant took advantage of a position of trust with C. by exploiting his close relationship with her father to gain access to her.

At sentencing, the trial court found that the "aggravating circumstances predominate in this case." The court rejected appellant's assertion that C.'s "consent" to his sexual conduct was a mitigating factor, reasoning that "consent" is not a defense to the charged offenses, and that it "would be inappropriate to consider the fact that a child who was vulnerable and who trusted [appellant] consented." The court then stated: "I don't even like using the word 'consent' because what – what does a young child like that in that position know? I don't find that [C.'s] consent should be considered to the extent

that a child can consent, and I don't think that they can." The court also noted that it had considered appellant's argument that his prior record was "insignificant," explaining that it did not regard his firearms conviction as insignificant but acknowledged that the offense occurred many years ago.

The trial court sentenced appellant to an aggregate term of 33 years four months in state prison as follows. On counts 3 and 5 (§ 288, subd. (b)(1)), the court imposed a full, separate and consecutive upper term of 10 years on each count, finding both offenses were committed on separate occasions within the meaning of section 667, subdivision (d)(1). On each of the remaining subordinate counts, the court imposed a consecutive term of two years (counts 1, 2 & 6) or eight months (counts 7–17).

### B. *The court did not refuse to consider a factor in mitigation.*

Appellant claims the trial court refused to apply an applicable mitigating factor listed in California Rules of Court, rule 4.423. He argues the court should have considered, as mitigation, C.'s testimony that she was a "willing participant" in sexual acts with appellant. He concedes that consent is not a legal defense to the offenses involving C. but contends the court should still have found her purported assent to the acts to be mitigating. While appellant does not identify a specific factor in mitigation, he appears to be relying on California Rules of Court, rule 4.423(a)(2), which provides: "The victim was an initiator of, or willing participant in . . . the incident."

As a general rule, a sentencing court must consider circumstances in aggravation and mitigation in selecting the appropriate sentence. (§ 1170, subd. (a)(3) ["the court shall apply the sentencing rules of the Judicial Council"]; Cal. Rules of Court, rules 4.409, 4.420.) California Rules of Court, rules 4.421 and 4.423 set forth an illustrative, nonexclusive list of potentially applicable, aggravating, and mitigating factors. (Cal. Rules of Court, rule 4.408(a); see *People v. Tatlis* (1991) 230 Cal.App.3d 1266, 1274.) "Unless the record affirmatively demonstrates otherwise, the trial court is deemed to have

42.

considered all the relevant sentencing factors set forth in the rules." (*People v. Parra Martinez* (2022) 78 Cal.App.5th 317, 322.)

Sentencing decisions are subject to the abuse of discretion standard. (*People v. Sandoval* (2007) 41 Cal.4th 825, 847; *People v. Hicks* (2017) 17 Cal.App.5th 496, 512.) A trial court abuses its discretion where it applies the wrong legal standard, or "its decision is so irrational or arbitrary that no reasonable person could agree with it." (*People v. Carmony* (2004) 33 Cal.4th 367, 377.) The burden is on the party attacking the sentence to demonstrate an abuse of discretion occurred. (*People v. Superior Court (Alvarez)* (1997) 14 Cal.4th 968, 977.)

Appellant fails to demonstrate the trial court refused to apply any applicable factor in mitigation. Contrary to appellant's assertion, the court did not "openly state that [it] didn't agree with the mitigating factors listed in [California Rules of Court, rule 4.423]." After expressing skepticism that a minor is capable of "consent" to sexual abuse, it found that the suggestion that C. "consented" was not mitigating because she was a vulnerable victim that appellant manipulated into committing sexual acts by virtue of his position of trust.[13] In other words, the court did not decline to apply a mitigating factor; it simply found that the evidence at trial did not support that factor. Given the court's well supported findings that appellant effectuated the sexual abuse of C. by exploiting her youth and immaturity, it was well within its discretion to conclude that C. was not a "willing participant" within the meaning of California Rules of Court, rule 4.423(a)(2). Accordingly, the court did not abuse its discretion at sentencing, and this claim is without merit.

---

[13] Appellant provides no authority for the proposition that the "consent" of minor victim of a sexual offense may, under any circumstances, warrant consideration as a factor in mitigation.

**C.** *Appellant's sentence did not violate state or federal prohibitions against cruel and unusual punishment.*

Appellant contends his sentence of 33 years four months constitutes cruel and unusual punishment in violation of the federal and state constitutions. He argues that the punishment is grossly disproportionate to his individual culpability.

The Eighth Amendment of the United States Constitution and article I, section 17, of the California Constitution prohibit the infliction of cruel and unusual punishment. (*In re Alva* (2004) 33 Cal.4th 254, 266.) A punishment violates the Eighth Amendment of the United States Constitution if it involves the "unnecessary and wanton infliction of pain" or if it is "grossly out of proportion to the severity of the crime." (*Gregg v. Georgia* (1976) 428 U.S. 153, 173.) Similarly, a punishment may violate article I, section 17, of the California Constitution if "it is so disproportionate to the crime for which it is inflicted that it shocks the conscience and offends fundamental notions of human dignity." (*In re Lynch* (1972) 8 Cal.3d 410, 424, fn. omitted.) "Whether a punishment is cruel and/or unusual is a question of law subject to our independent review, but underlying disputed facts must be viewed in the light most favorable to the judgment." (*People v. Palafox* (2014) 231 Cal.App.4th 68, 82.)

Preliminarily, we observe defense counsel did not raise this constitutional claim when the trial court imposed his sentence. California law is clear that by failing to raise the issue below, he has forfeited the claim. (*People v. Gamache* (2010) 48 Cal.4th 347, 403; *People v. Mungia* (2008) 44 Cal.4th 1101, 1140–1141; *People v. Speight* (2014) 227 Cal.App.4th 1229, 1247.)

In any event, the claim fails on the merits. "The sexual abuse of a child is a most serious crime and an act repugnant to the moral instincts of a decent people." (*Ashcroft v. Free Speech Coalition* (2002) 535 U.S. 234, 245.) Such crimes "may have lifelong consequences to the well-being of the child." (*People v. Christensen* (2014) 229 Cal.App.4th 781, 806.) Accordingly, " 'great deference is ordinarily paid to

legislation designed to protect children, who all too frequently are helpless victims of sexual offenses.' " (*People v. Baker* (2018) 20 Cal.App.5th 711, 729.)

Appellant repeatedly victimized two minor victims over the course of several years. The molestation of L. began when she was as young as age nine. Appellant used his role as a stepfather and coach to isolate the victims and repeatedly subject them to significant and invasive acts of sexual abuse. At sentencing, victim impact statements demonstrated that L. and C. each endured years of pain and trauma stemming from appellant's conduct.

Given the egregiousness and predatory nature of appellant's conduct, there is no basis on which to conclude appellant's statutorily authorized sentence was "grossly out of proportion to the severity of the crime" (*Gregg v. Georgia*, *supra*, 428 U.S. at p. 173), nor "so disproportionate to the crime for which it is inflicted that it shocks the conscience and offends fundamental notions of human dignity" (*In re Lynch*, *supra*, 8 Cal.3d at p. 424, fn. omitted). Our independent review of the record, therefore, demonstrates that appellant's sentence is not cruel or unusual, and we reject appellant's constitutional challenge to his sentence.

## VII. The Determinate Abstract of Judgment Has a Clerical Error Which Must be Corrected.

The determinate abstract of judgment incorrectly lists appellant's conviction on count 16 as a violation of section "287(b)(2)." We direct the trial court to amend the determinate abstract to reflect appellant was convicted of a violation of section 287, subdivision (b)(1) on count 16. (See *People v. Mitchell* (2001) 26 Cal.4th 181, 185 [an appellate court may correct clerical errors in an abstract of judgment].)

## DISPOSITION

The trial court is directed to prepare an amended determinate abstract of judgment reflecting appellant was convicted of a violation of section 287, subdivision (b)(1) on

count 16.  The court shall then forward the amended determinate abstract of judgment to the appropriate entities.  In all other respects, the judgment is affirmed.


                                                   LEVY, Acting P. J.

WE CONCUR:


FRANSON, J.


PEÑA, J.